BRIAN WHITE,                        )
                                    )   Civil Action
            Plaintiff              )   No. 09-cv-4353
                                    )
      vs.                           )
                                    )
JACK BROMMER and                    )
BOROUGH OF COLUMBIA,                )
                                    )
            Defendants             )

* * *

APPEARANCES:

        Anthony R. Sherr, Esquire, and
        Kevin M. Durkan, Esquire
              On behalf of Plaintiff

        Christopher P. Gerber, Esquire
              On behalf of Defendants

* * *

O P I N I O N

JAMES KNOLL GARDNER,
United States District Judge

      This matter is before the court on the Motion of

Defendants Jack Brommer and Borough of Columbia to Partially

Dismiss Plaintiff's Complaint, which motion was filed on

November 19, 2009.[1]  Plaintiff, Brian White's Response in

Opposition to Defendants, Sgt. Jack Brommer and Borough of

Columbia's Partial Motion to Dismiss the Complaint was filed on

---

[1]      Defendants also filed a Brief in Support of the Motion of
Defendants Jack Brommer and Borough of Columbia to Partially Dismiss
Plaintiff's Complaint ("Defendants' Brief") on November 19, 2009.

December 3, 2009.[2]  The Reply Brief of Defendants in Support of

their Motion to Partially Dismiss Plaintiff's Complaint was filed

on December 29, 2009.

SUMMARY OF DECISION

In this civil-rights lawsuit, plaintiff Brian White, an

African-American, brings both federal statutory, and state

common-law, causes of action against defendant police Sergeant

Jack Brommer and his employer, defendant Borough of Columbia,

Lancaster County, Pennsylvania.  The suit arises from plaintiff's

arrest by Sergeant Brommer on charges of public drunkenness and

disorderly conduct and plaintiff's subsequent termination from

his employment as a doorman providing security at the Riverside

Bar & Grill in Columbia.

In Count I of the Complaint[3], plaintiff sues both

defendants pursuant to 42 U.S.C. § 1983 for an unconstitutional

seizure of his person in violation of the Fourth and Fourteenth

Amendments to the United States Constitution.  Plaintiff alleges

that there was no probable cause to arrest him, that his seizure

was unreasonable, and that his treatment by defendants violated

_____

[2]     Plaintiff, Brian White's Brief in Opposition to Defendants,
Sgt. Jack Brommer and Borough of Columbia's Partial Motion to Dismiss the
Complaint ("Plaintiff's Brief") was filed December 3, 2009.

[3]     Plaintiff labels the various counts in the complaint as the "First
Cause of Action," "Second Cause of Action," and so on through the "Sixth Cause
of Action".  For ease of reference, these causes of action will be referred
to as Counts I through VI.

his rights under those Amendments to be free from unreasonable seizure.[4]

In their motion to partially dismiss the Complaint, both defendants seeks dismissal of Count I to the extent that it asserts a due process claim under the Fourteenth Amendment because the more specific text of the Fourth Amendment applies.

While defendants are correct that the Fourth Amendment governs and a substantive due process claim under the Fourteenth Amendment would properly be dismissed, their argument is moot because plaintiff concedes that he is not alleging a substantive due process claim. Accordingly, I denied defendants' motion to dismiss the Fourteenth Amendment claim.

However, because plaintiff is not alleging a Fourteenth Amendment claim, only his Fourth Amendment claim remains in Count I. Because defendants' motion to dismiss did not attack the Fourth Amendment claim, that claim against both defendants remains in the lawsuit.

In Count II of the Complaint, plaintiff sues both defendants pursuant to 42 U.S.C. § 1983 for malicious prosecution in violation of the Fourth and Fourteenth Amendments. In this count, plaintiff alleges that there was no probable cause for his arrest, that he was not intoxicated and had not engaged in any disorderly conduct, that he was acquitted of both charges, and

---

[4]     Complaint ¶¶ 27-29.

that his treatment by defendants violated his rights under those Amendments to be free from malicious prosecution.[5]

In their motion to dismiss, both defendants seek dismissal of Count II. They contend that plaintiff has not pled a necessary element of a malicious prosecution claim when filed against a police officer rather than a prosecutor — that is, facts alleging that Sergeant Brommer knowingly provided false information to the prosecutor.

I concluded that plaintiff's Complaint does contain such facts. I concluded that the Complaint supports the reasonable inference that defendant Brommer either initiated the prosecution directly, or communicated information to the prosecutor which Sergeant Brommer knew to be false.

Accordingly, I denied defendants' motion to dismiss Count II from plaintiff's Complaint. Therefore, Count II remains in the lawsuit against both defendants.

In Count III of the Complaint, plaintiff sues both defendants pursuant to 42 U.S.C. § 1981 for intentional discrimination in regard to plaintiff's right to contract.

In this count, plaintiff alleges that he is an African American. Plaintiff contends that with the intent to discriminate against plaintiff because of his race, defendant Sergeant Brommer contacted plaintiff's employer and requested

---

[5]    Complaint ¶¶ 16, 22, 31-33.

termination of plaintiff's employment. Plaintiff asserts that the discrimination resulted in the violation of his protected right to make, enforce and carry out his employment contract at the Riverview Bar & Grill.[6]

In its motion to partially dismiss the Complaint, defendant Borough of Columbia seeks dismissal of Count III against the Borough because Section 1981 does not provide for a private cause of action against a municipal defendant. Defendant Borough argues that plaintiff must seek redress against the Borough for violation of his Section 1981 rights through a cause of action under Section 1983. Moreover, defendant Borough asserts that plaintiff has not pled facts to support a Section 1983 action against the Borough for violation of plaintiff's Section 1981 rights.

Plaintiff concedes in his Brief that pursuant to McGovern v. City of Philadelphia, 554 F.3d 114 (3d Cir. 2009), Section 1981 only provides for a cause of action against Sergeant Brommer. However, plaintiff argues that his Complaint avers sufficient facts to support a Section 1983 claim against the Borough pursuant to Monell v. Department of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), because the Borough failed to train its officers concerning contact with arrestees' employers.

---

[6]     Complaint ¶¶ 35-37.

I ruled that in order for plaintiff to recover, the failure to train must have caused a pattern of violations. I concluded that plaintiff failed to state a "failure to train" Monell claim under either a "pattern of violations" theory, or a "single violation" theory. I ruled that plaintiff's averments do not show, or support a reasonable inference, that the Borough's failure to train its officers caused Sergeant Brommer to call the owner of the bar and thereby interfere with plaintiff's Section 1981 rights.

Accordingly, I granted defendant Borough's motion to dismiss Count III against the Borough for failure to state a Section 1983 Monell claim against the Borough for violating plaintiff's Section 1981 rights. However, I granted plaintiff leave to amend his Complaint to clearly aver the factual and legal basis for a "failure to train" Monell claim against the Borough.

Because neither defendant filed or briefed a motion to dismiss plaintiff's Count III claims against defendant Sergeant Brommer, those claims remain in the lawsuit.

Counts IV, V and VI of the Complaint each allege pendant state-law claims under Pennsylvania common law against only defendant Sergeant Brommer.

In Count IV of the Complaint, plaintiff sues only defendant Brommer for intentional infliction of emotional

distress under Pennsylvania common law. In this count, plaintiff alleges that Sergeant Brommer's actions of telephoning plaintiff's employer and informing him of plaintiff's arrest and requesting that plaintiff be terminated from his employment constituted extreme and outrageous conduct. Plaintiff avers that Sergeant Brommer intended to inflict emotional distress on plaintiff when he telephoned plaintiff's employer.[7]

In his motion to dismiss, defendant Brommer seeks dismissal of Count IV because his alleged conduct was not extreme and outrageous as a matter of law, and because plaintiff pled no facts supporting a reasonable inference that he suffered, or is suffering from, emotional distress and that such distress is or was real.

I concluded as a matter of law that, as pled, Sergeant Brommer's conduct was sufficiently extreme and outrageous to support plaintiff's emotional distress claim. However, I also concluded that plaintiff failed to state an emotional distress claim because he did not sufficiently plead the requisite harm.

I ruled that in order to recover for intentional infliction of emotional distress, plaintiff must suffer some type of resulting physical harm because of defendant's outrageous conduct. However, plaintiff's Complaint is silent as to how this severe emotional distress manifested itself.

---

[7]     Complaint ¶¶ 39-40.

Therefore, I granted defendant's motion and dismissed Count IV against defendant Brommer from the Complaint for failure to adequately plead harm.  However, I granted plaintiff leave to amend his Complaint to clearly aver what physical harm he suffered, if any, because of the alleged outrageous conduct of defendant Brommer.

In Count V of the Complaint, plaintiff sues only defendant Brommer for tortious interference with a contractual relationship under Pennsylvania common law.

In this count, plaintiff alleges that a contractual relationship existed between plaintiff and his employer because plaintiff was an at-will employee of the Riverview Bar & Grill. He contends that defendant Sergeant Brommer acted with the specific intent to harm plaintiff's continued employment at the bar when defendant Brommer telephoned the bar owner to inform him that plaintiff had been arrested and to request that the owner terminate plaintiff's employment.  Plaintiff avers that as a result, he was terminated from his employment.[8]

In his motion to dismiss, defendant Brommer seeks dismissal of Count V on the ground that Pennsylvania does not recognize a cause of action for tortious interference with a contract based on alleged interference with an on-going, at-will employment relationship.

---

[8]     Complaint ¶¶ 43-48.

I concluded that the Supreme Court of Pennsylvania has not ruled on this issue and that the Superior Court of Pennsylvania has ruled inconsistently on the subject. I predicted that, if presented with the issue, the Supreme Court of Pennsylvania will recognize a cause of action for tortious interference with an existing at-will employment relationship.

Therefore, I denied defendant Brommer's motion to dismiss Count V from plaintiff's Complaint. As a result, Count V remains in the lawsuit against defendant Brommer.

In Count VI of the Complaint, plaintiff sues only defendant Brommer for defamation under Pennsylvania common law. In this count, plaintiff alleges that Sergeant Brommer's statement to plaintiff's employer that plaintiff's conduct and public drunkenness made him unfit to continue as a doorman at the bar, harmed plaintiff's reputation and caused plaintiff to lose his job.[9]

In his motion to dismiss, defendant Brommer seeks dismissal of Count VI against him on the grounds that his communication to the bar owner did not constitute defamation. Sergeant Brommer contends that his communication was "pure opinion", and that pure opinion, without more, does not create a defamation cause of action. He also argues that plaintiff failed to demonstrate that Sergeant Brommer's communication of his

---

[9]     Complaint ¶¶ 50-51.

opinion could reasonably be understood to imply the existence of undisclosed defamatory facts.

Plaintiff argued that Sergeant Brommer's statements constitute defamation per se because the statements impute a "criminal offense" and "business misconduct" to plaintiff.

I ruled that informing an individual's employer that the employee "was arrested" reasonably implies the fact of criminal conduct by that individual to justify the arrest. I concluded that if Sergeant Brommer did not expose plaintiff to public hatred, contempt, or ridicule by informing the owner that plaintiff was arrested for public drunkenness and disorderly conduct and was unfit to work as a doorman, defendant Brommer certainly did, according to the Complaint, tend to blacken plaintiff's reputation and injure him in his business or employment.

Accordingly, I denied defendant Brommer's motion to dismiss Count VI from plaintiff's Complaint. Therefore, Count VI remains in the Complaint against defendant Brommer.

My reasons and further analysis are articulated below.

<u>JURISDICTION</u>

This action is before the court on federal question jurisdiction. Plaintiff's Complaint asserts claims against defendants under 42 U.S.C. § 1981 and § 1983. <u>See</u> 28 U.S.C. § 1331. Both plaintiff's federal and state-law claims are

premised on the same conduct by defendant Brommer.  Plaintiff's state-law claims are part of the same case or controversy and are, therefore, properly before the court on supplemental jurisdiction.  <u>See</u> 28 U.S.C. § 1367.

<u>VENUE</u>

Venue is proper because plaintiff alleges that all, or a substantial part, of the events giving rise to these claims occurred in Lancaster County, Pennsylvania, which is in this judicial district.  28 U.S.C. §§ 118, 1391.

<u>PROCEDURAL HISTORY</u>

This matter is before the court on the Complaint filed September 24, 2009 by plaintiff Brian White.  Defendants filed a motion for partial dismissal of the Complaint on November 19, 2009, which motion, having been briefed by the parties, is now before the court for disposition.

<u>FACTS</u>

Taking all of the well-pled facts contained in the Complaint as true, as I am required to do under the standard of review applicable to a motion to dismiss, discussed below, the facts of this case are as follows.

Plaintiff Brian White is an African-American male who was employed as a doorman providing security at the Riverview Bar & Grill in Columbia, Lancaster County, Pennsylvania.[10]  Defendant

---

[10]     Complaint ¶¶ 7, 10.

Sergeant Jack Brommer was employed as a law enforcement officer by defendant Borough of Columbia.[11]

Plaintiff was not working on May 24, 2009, but he was a patron at the bar that day.[12]  He was not intoxicated and did not engage in any disorderly conduct.[13]  He left the bar and began walking home.[14]

Sergeant Brommer was on duty that day and was dispatched to the Riverside Bar & Grill.[15]  Plaintiff had already left the bar when Sergeant Brommer arrived there.[16]  When defendant Brommer arrived at the bar he said that he "wanted Brian White."[17]

Shortly thereafter, while plaintiff White was walking home, he was "picked up" by Columbia Borough Police officers and transported back to the Riverside Bar & Grill.  Upon arrival at the bar, plaintiff was arrested by Sergeant Brommer on charges of public drunkenness and disorderly conduct.[18]

---

[11]    Complaint ¶ 9.

[12]    Complaint ¶¶ 11, 13.

[13]    Complaint ¶ 16.

[14]    Complaint ¶¶ 13, 15.

[15]    Complaint ¶ 12.

[16]    Complaint ¶ 13.

[17]    Complaint ¶ 14.

[18]    Complaint ¶ 15.

On the following day, Sergeant Brommer telephoned plaintiff's employer, the owner and manager of the Riverview Bar & Grill.[19]  Sergeant Brommer told the owner that plaintiff had been arrested for public drunkenness and disorderly conduct and that plaintiff was "unfit to work as a doorman/security." Sergeant Brommer requested that the owner fire plaintiff.[20]

Solely as a result of the call from Sergeant Brommer, plaintiff was fired from his job and has been unable to secure other employment since that time despite diligent attempts to do so.[21]  Plaintiff was acquitted on both the public drunkenness and disorderly conduct charges in the Columbia Borough Municipal Court.[22]

### STANDARD OF REVIEW

A claim may be dismissed under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted."  A 12(b)(6) motion requires the court to examine the sufficiency of the complaint.  Conley v. Gibson, 355 U.S. 41, 45, 78 S.Ct. 99, 102, 2 L.Ed.2d 80, 84 (1957) (abrogated in other respects by Bell Atlantic Corporation v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

---

[19]    Complaint ¶ 17.

[20]    Complaint ¶ 18.

[21]    Complaint ¶¶ 19, 20.

[22]    Complaint ¶¶ 21-22.

Generally, in ruling on a motion to dismiss, the court relies on the complaint, attached exhibits, and matters of public record, including other judicial proceedings. Sands v. McCormick, 502 F.3d 263, 268 (3d. Cir. 2008).

Except as provided in Federal Rule of Civil Procedure 9, a complaint is sufficient if it complies with Rule 8(a)(2), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(a)(2) does not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face. Twombly, 550 U.S. at 570, 127 S.Ct. at 1974, 167 L.Ed.2d at 949.[23]

In determining whether a complaint is sufficient, the court must accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading, the plaintiff may be entitled to relief. Fowler, 578 F.3d at 210 (quoting

---

[23]    The Supreme Court's Opinion in Ashcroft v. Iqbal, __ U.S. __, __, 129 S.Ct. 1937, 1953, 173 L.Ed.2d 868, 887 (2009), states clearly that the "facial plausibility" pleading standard set forth in Twombly applies to all civil suits in the federal courts. Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).

        This showing of facial plausibility then "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and that the plaintiff is entitled to relief. Fowler, 578 F.3d at 210 (quoting Iqbal, __ U.S. at __, 129 S.Ct. at 1949, 173 L.Ed.2d at 884).

        As the Supreme Court explained in Iqbal, "[t]he plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that the defendant acted unlawfully." Iqbal, __ U.S. at __, 129 S.Ct. at 1949, 173 L.Ed.2d at 884.

<u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 233 (3d Cir. 2008)).

Although "conclusory" or "bare-bones allegations" will not survive a motion to dismiss, <u>Fowler</u>, 578 F.3d at 210, a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits. <u>Phillips</u>, 515 F.3d at 231. Nonetheless, to survive a 12(b)(6) motion, the complaint must provide enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary elements. <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 556, 127 S.Ct. at 1965, 167 L.Ed.2d at 940) (internal quotations omitted).

The court is required to conduct a two-part analysis when considering a Rule 12(b)(6) motion. First, the factual matters averred in the complaint, and any attached exhibits, should be separated from legal conclusions asserted. <u>Fowler</u>, 578 F.3d at 210. Any facts pled must be taken as true, and any legal conclusions asserted may be disregarded. <u>Id.</u> at 210-211.

Second, the court must determine whether those factual matters averred are sufficient to show that the plaintiff has a "plausible claim for relief." <u>Id.</u> at 211 (quoting <u>Iqbal</u>, ___ U.S. at ___, 129 S.Ct. at 1950, 178 L.Ed.2d at 884).

Ultimately, this two-part analysis is "context-specific" and requires the court to draw on "its judicial experience and common sense" to determine if the facts pled in the complaint have "nudged [plaintiff's] claims" over the line from "[merely] conceivable [or possible] to plausible." Iqbal, __ U.S. at __, 129 S.Ct. at 1949-1950, 178 L.Ed.2d at 884-885.

A well-pleaded complaint may not be dismissed simply because "it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." Twombly, 550 U.S. at 556, 127 S.Ct. at 1965, 167 L.Ed.2d at 940-941.

DISCUSSION

Count I - Unconstitutional Seizure

Count I alleges that defendants affected an unconstitutional seizure of plaintiff. It asserts a claim under 42 U.S.C. § 1983 ("Section 1983") by averring a violation of the Fourth and Fourteenth Amendments of the United States Constitution. Defendants seek dismissal of Count I to the extent that it asserts a due process claim under the Fourteenth Amendment. Specifically, defendants argue that a substantive due process claim based on the Fourteenth Amendment is inappropriate and should be dismissed because the more specific text of the Fourth Amendment applies.[24]

---

[24] Defendants' Brief at page 3.

Although defendants are correct that the Fourth Amendment governs and a substantive due process claim here would properly be dismissed,[25] the argument is moot because plaintiff concedes that he is not alleging a substantive due process claim.[26] As such, defendant's motion to dismiss a substantive due process claim is denied.

Count II - Malicious Prosecution

Count II alleges that defendants are liable for malicious prosecution of plaintiff. It also asserts a claim under Section 1983, alleging violations of both the Fourth Amendment and the Fourteenth Amendment.[27] Defendants seek dismissal of Count II. They contend that plaintiff has not pled a necessary element of a malicious prosecution claim when filed against a police officer, rather than a prosecutor[28] — that is, facts alleging that Sergeant Brommer knowingly provided false information to the prosecutor.

In Kossler v. Crisanti, 564 F.3d 181 (3d Cir. 2009), the United States Court of Appeals for the Third Circuit

---

[25]    The constitutionality of arrests by state officials is governed by the Fourth Amendment rather than due process analysis. Berg v. County of Allegheny, 219 F.3d 261, 269 (3d Cir. 2000)(citing County of Sacramento v. Lewis, 523 U.S. 833, 842-843, 118 S.Ct. 1708, 1715, 140 L.Ed.2d 1043, 1055 (1998)).

[26]    Specifically, plaintiff states that "[t]o the extent Defendants seek to dismiss a substantive due process claim, Plaintiff is not alleging any such claim at this time." Plaintiff's Brief at page 6 n.2.

[27]    Complaint ¶¶ 30-33.

[28]    Defendants' Brief at page 12.

articulated five elements of a malicious prosecution claim

brought under Section 1983.  In order to establish such a claim,

a plaintiff must show that:

> (1) the defendants initiated a criminal
> proceeding; (2) the criminal proceeding ended in
> plaintiff's favor; (3) the proceeding was
> initiated without probable cause; (4) the
> defendants acted maliciously or for a purpose
> other than bringing the plaintiff to justice; and
> (5) the plaintiff suffered deprivation of liberty
> consistent with the concept of seizure as a
> consequence of a legal proceeding.

564 F.3d at 186.

Although a prosecutor is generally responsible for

initiating a proceeding against a defendant, a police officer can

be considered to have done so if he or she "knowingly provided

false information to the prosecutor or otherwise interfered with

the prosecutor's informed discretion."  Merrero v. Micewski,

1998 WL 414724, at *6 (E.D.Pa. July 22, 1998)(Broderick, J.); see

Domenech v. City of Philadelphia, 2009 U.S.Dist. LEXIS 34902, at

*38-40 (E.D.Pa. April 23, 2009)(Surrick, J.); Vassallo v. Fox,

2004 WL 2827517, at *7 (E.D.Pa. December 9, 2004)(Kelly, S.J.)

(citing Gatter v. Zappile, 67 F.Supp.2d 515, 521 (E.D.Pa. 1999)

(Katz, S.J.)).

### Initiation of Criminal Proceedings

The first element of a malicious prosecution claim

requires a plaintiff to establish that defendants initiated a

criminal proceeding.  In order to support a malicious prosecution

claim based on police conduct, the police officer must take an active role in the initiation of the proceedings and communicate information to the prosecutor which the officer knows to be false.  For example, knowingly providing faulty information in a warrant application is sufficient to show that a police officer initiated a proceeding, <u>Vassallo</u>, <u>supra</u>.  However, merely serving as a fact-gatherer for the prosecutor is not.  <u>Gatter</u>, <u>supra</u>.

In <u>Kossler</u>, <u>supra</u>, summary judgment was entered against plaintiff Michael Kossler, and his malicious prosecution claim was dismissed, because he failed to establish the second element of a malicious prosecution claim (requiring the prosecution to end in plaintiff's favor).  However, the portion of the Third Circuit's Opinion discussing the first element (requiring the police officer to have initiated the prosecution) offers guidance in the case before this court.

In <u>Kossler</u>, the Offense/Incident Report written by defendant-Officer Crisanti listed the Pennsylvania statutory provisions covering the offenses charged against plaintiff, including public intoxication and disorderly conduct.  <u>Kossler</u>, 564 F.3d at 185.  Without reaching the issue of who initiated the prosecution (the first element), the district court granted summary judgment on the grounds that the underlying criminal proceeding did not terminate in Mr. Kossler's favor (the second

element).  See Kossler, 2005 U.S.Dist. LEXIS 15584, at *19-20

(W.D.Pa. August 1, 2005)(McVerry, J).  On appeal, a majority of

the Third Circuit Court of Appeals affirmed summary judgment on

the same grounds, and, therefore, did not reach the first

element.  Kossler, 564 F.3d at 189, 192.

However, four Circuit Judges,[29] concurring in part and

dissenting in part, would have reached the first element issue

and would have held summary judgment inappropriate because of

disputed facts related to the question of who initiated the

prosecution.  Kossler, 564 F.3d at 198-199.  Specifically, and

similar to plaintiff's allegation here, the plaintiff in Kossler

alleged that Officer Crisanti arrested him for, and charged him

with, public drunkenness and disorderly conduct despite the

absence of any probable cause or reasonable suspicion that

plaintiff had committed such offenses.  Id.

Because of a dispute between the Kossler parties over

the truth or falsity of Officer Crisanti's police report, upon

which those charges were based, the dissenting and concurring

members of the Third Circuit Kossler Court would have denied

summary judgment against plaintiff on the element of who

initiated the prosecution.  Id.

The reasoning of the Third Circuit judges who would

have reached the prosecution-initiation issue in Kossler is

_____

[29]    Circuit Judges Ruggero J. Aldisert, Dolores K. Sloviter,
Theodore A. McKee and Thomas L. Ambro.

persuasive.  It cautions strongly against dismissal of plaintiff's malicious prosecution claim on the initiation element in the case before this court.

Specifically, in this case plaintiff Brian White avers that he was neither intoxicated nor behaving in a disorderly manner.[30]  Plaintiff White's averment could be considered a conclusion of law and properly disregarded under Twombly, supra, Iqbal, supra, and Fowler, supra.  However, it could also be considered to be a factual averment regarding plaintiff's level of awareness, his inebriation or sobriety, and the general manner of his behavior.  Taken as true and viewed in the light most favorable to plaintiff as I am required to do under the foregoing standard of review, plaintiff's averment that he was neither intoxicated nor behaving in a disorderly manner supports the reasonable inference that Sergeant Brommer knew that any contrary assertions he may have made in his police report of the incident were false.

However, that inference alone is insufficient to defeat defendant's motion to dismiss plaintiff's malicious prosecution claim.  The Complaint must also aver facts showing, or supporting, a reasonable inference that Sergeant Brommer actually communicated such information to the prosecutor or otherwise initiated the proceeding against plaintiff.  See Merrero, supra,

---

[30]     Complaint ¶ 16.

1998 WL 414724, at *6-8.[31]  I find that plaintiff's Complaint
contains such facts.

The averments in plaintiff White's Complaint support
two reasonable inferences, each of which is sufficient to
withstand defendants challenge to the initiation-of-prosecution
element at the motion-to-dismiss stage.  Specifically, the White
Complaint avers that Sergeant Brommer arrested plaintiff for
public drunkenness and disorderly conduct.  Following his arrest,
plaintiff avers, he was tried in the Columbia Borough Municipal
Court and "acquitted of both...charges."[32]

---

[31]     In Merrero v. Micewski, the plaintiff, Rafael Merrero, asserted
malicious prosecution claims against three police officer defendants - Eggles,
Sunderhauf, and Micewski.  Former District Judge Broderick of this court
granted summary judgment in favor of Officers Eggles and Sunderhauf because,
although they may have assisted in the preparation of some documents that were
eventually communicated by Officer Micewski to the Charging Unit in the
District Attorney's office, there was no evidence that either Officer
Sunderhauf or Officer Eggles provided any information regarding Mr. Merrero to
the prosecutor, whether true or false.  Merrero, 1998 WL 414724, at *7.
Therefore, neither could be found to have initiated the proceedings against
plaintiff Merrero.

By contrast, defendant Micewski did provide information to the
District Attorney's office regarding plaintiff.  Specifically, defendant
Micewski (1) participated in the initial arrest and search of Mr. Merrero's
automobile; (2) swore out an affidavit and applied for a search warrant for
Mr. Merrero's residence; (3) participated in the execution of that search
warrant; (4) compiled a "Complaint Fact Record" enumerating the various counts
against Mr. Merrero after the search warrant was executed; and most
importantly, (5) transmitted the Complaint Fact Record to the Charging
Unit accompanied by copies of the search warrant and Officer Micewski's
affidavit.  Id. at *2-3.

On those grounds, the court found that Micewski clearly had
communicated information to the prosecutor regarding Mr. Merrero.  Id. at *7.
However, the court granted summary judgment in Officer Micewski's favor
because Mr. Merrero failed to demonstrate a material issue of fact as to the
truth or falsity of the information Officer Micewski communicated.  Id.

[32]     Complaint ¶¶ 18, 21-22

First, if a prosecutor tried the case in municipal court, then it is reasonable to infer that the arresting officer, Sergeant Brommer, communicated information regarding the charged offenses to the prosecutor. As already noted, the averments of plaintiff's Complaint support a reasonable inference that Sergeant Brommer knew plaintiff was not intoxicated or behaving in a disorderly manner. Together, these reasonable inferences support the prosecution-initiation element of plaintiff's claim.

Second, and alternatively, if Sergeant Brommer presented the charges in municipal court himself, then he would have initiated the proceedings directly. Here, again, a reasonable inference drawn from the plaintiff's Complaint supports the initiation element of his claim.

While the specific nature of the municipal court proceedings are not entirely clear from the Complaint, the Complaint does support the reasonable inference that defendant either initiated the proceedings directly or communicated information to the prosecutor that Sergeant Brommer knew to be false. Accordingly, because plaintiff has pled facts, and because reasonable inferences can be drawn from the facts pled, to satisfy the elements of malicious prosecution, I deny defendants' motion to dismiss Count II.

<u>Count III - Discrimination Regarding Right to Contract</u>

Count III alleges that defendants are liable for intentional discrimination against plaintiff. Specifically, plaintiff alleges discrimination regarding his right to contract in violation of 42 U.S.C. § 1981 ("Section 1981").[33] Defendants seek dismissal of Count III against defendant Borough of Columbia because Section 1981 does not provide for a private cause of action against a municipal defendant.[34]

Defendants argue that, under <u>McGovern v. City of Philadelphia</u>, 554 F.3d 114, 120-122 (3d Cir. 2009), plaintiff must seek redress against the Borough of Columbia for violation of his Section 1981 rights through a cause of action under Section 1983. Moreover, defendants argue, plaintiff has not pled facts to support a Section 1983 action against the Borough of Columbia for violation of plaintiff's Section 1981 rights.[35]

Plaintiff concedes in his brief that, pursuant to <u>McGovern</u>, Section 1981 only provides for a cause of action against Sergeant Brommer. However, plaintiff argues that his Complaint avers sufficient facts to support a Section 1983

---

[33]    Complaint at pages 7-8.

[34]    Defendants' Brief at pages 4-5 (citing <u>McGovern</u>, <u>supra</u>; Defendants' Reply Brief at pages 1-2 (citing same).

[35]    Defendants' Reply Brief at pages 2-3.

- 24 -

<u>Monell</u>[36] claim against the Borough of Columbia.[37]  Specifically, plaintiff argues that paragraphs 1, 4 and 24 of his Complaint[38], which are incorporated by reference in paragraph 34 under Count III, provide a sufficient basis for his <u>Monell</u> claim.

Because plaintiff's argument that Count III asserts claims under both Section 1981 and Section 1983 is ultimately unpersuasive, I grant defendants' motion to dismiss Count III against defendant Borough of Columbia and grant leave to amend for two reasons.

## Complaint Headings

First, the heading above Count III in the Complaint is inconsistent with the assertion of a Section 1983 <u>Monell</u> claim.

---

[36]    <u>Monell v. Department of Social Services</u>, 436 U.S. 658, 694-695, 98 S.Ct. 2018, 2037-2038, 56 L.Ed.2d 611, 638 (1978).

[37]    Plaintiff's Brief at pages 9-10.

[38]    Paragraph 1 of the Complaint provides: "This is an action under 42 U.S.C. § 1983, 42 U.S.C. § 1981, and the United States Constitution[,] the Federal Common Law[,] and State Law challenging the arrest and prosecution of Brian White on May 24, 2009 and Defendant's subsequent interference with Brian White's employment contract."

Paragraph 4 of the Complaint states: "This Court has jurisdiction under 28 U.S.C. § 1331, 42 U.S.C. § 1981 and [§] 1983, and the Fourth and Fourteenth Amendments to the United States Constitution."

Paragraph 24 of the Complaint reads:

The lack of adequate training of Columbia Borough Police Officers in the area of lawful arrests and post arrest procedures, including but not limited to interference with arrestees' employment contracts, constitutes deliberate indifference to the constitutional rights of Brian White, and is a policy, custom, or practice of [the] Borough of Columbia for purposes of imposing municipal liability.

Paragraph 24 comes under the heading "ALLEGATIONS OF LAW," which is distinct from the heading "FACTUAL ALLEGATIONS" which appears just prior to paragraphs 10 through 22.

Specifically, the heading reads "THIRD CAUSE OF ACTION Intentional Discrimination in [R]egards to Plaintiff's Right to Contract Under 42 U.S.C. § 1981."[39]

Plaintiff contends his headings are merely "informal titles", distinct from the substance of the Complaint. Nonetheless, the headings of Counts I and II each explicitly state that those claims are "Under 42 U.S.C. § 1983," among other things.[40] If plaintiff was in fact asserting Counts I, II, and III under Section 1983, the express mention of Section 1983 in Counts I and II and its conspicuous absence from Count III renders the causes of action asserted in Count III unclear at best.

## Incorporation by Reference

Second, while the Complaint is not a model of clarity, plaintiff is correct that the paragraphs referencing Section 1983 and municipal liability are incorporated by reference under Count III. Despite plaintiff's incorporation by reference of all prior paragraphs, Count III fails to state a Monell claim against the Borough of Columbia.

---

[39] There is a line-break in the heading above Count III such that the phrases "Plaintiff's Right to Contract" and "Under § 1981" are separated and do not read continuously as "Plaintiff's Right to Contract Under § 1981." Complaint at pages 7-8. As discussed subsequently, even if "Plaintiff's Right to Contract Under § 1981 was on a single line and not separated, the heading would still be ambiguous in light of the headings above Counts I and II.

[40] Complaint at pages 6-7.

## **Monell** Claim

To establish a Monell claim against the Borough of Columbia under Section 1983, plaintiff must show "(1) the existence of a custom or policy of the municipality and (2) that the municipality's employees violated the plaintiff's civil rights while acting pursuant to this custom or policy." Winslow v. The Borough of Malvern Pennsylvania, 2009 WL 4609590, at *6 (E.D.Pa. December 7, 2009)(DuBois, J.)(citing Monell, supra.)

A municipality's failure to adequately train its officers and employees gives rise to a cause of action under Section 1983 if the deficient training reflects a deliberate indifference to an individual's civil rights, including those guaranteed under Section 1981,[41] and is "closely related to the ultimate injury."[42]  Kline ex rel Arndt v. Mansfield, 255 Fed.Appx. 624, 629 (3d Cir. 2007)(citing City of Canton v.

---

[41]     Section 1981 protects the equal right of all persons within the jurisdiction of the United States "to make and enforce contracts without respect to race."  Domino's Pizza, Inc. v. McDonald, 546 U.S. 470, 474-475, 126 S.Ct. 1246, 1249, 163 L.Ed.2d 1069, 1075 (2006)(quoting 42 U.S.C. § 1981(a))(internal quotations omitted).

[42]     Mere proof that an injury could have been avoided if the municipal officer or employee "had better or more training is not enough to show municipal liability" under a "failure to train" Monell claim.  Kline, 255 Fed.Appx. at 629 (citing Harris, 489 U.S. at 391, 109 S.Ct. at 1205, 103 L.Ed.2d at 427-428).  Instead, plaintiff must show that the training deficiency was the actual cause of the violation of plaintiff's civil rights. Harris, 489 U.S. at 390, 109 S.Ct. at 1205, 103 L.Ed.2d at 427-428; Wolosyzn v. County of Lawrence, 396 F.3d 314, 325 (3d Cir. 2005).

<u>Harris</u>, 489 U.S. 378, 388, 109 S.Ct. 1197, 1206, 103 L.Ed.2d 412, 428 (1989)); <u>see</u> <u>McGovern</u>, 554 F.3d at 120-122.

The Third Circuit has noted that establishing municipal liability on a <u>Monell</u> claim for inadequate training is difficult. <u>Reitz v. County of Bucks</u>, 125 F.3d 139, 145 (3d Cir. 1997). Generally, deficient training can only amount to the requisite deliberate indifference "where the failure to train has caused a pattern of violations." <u>Berg v. County of Allegheny</u>, 219 F.3d 261, 276 (3d Cir. 2000).

However, an exception exists and a "failure to train" <u>Monell</u> claim may proceed absent a pattern of violations only where (1) "a violation of federal rights may be a highly predictable consequence of a failure to equip law enforcement officers with specific tools [or skills] to handle recurrent situations," and (2) the likelihood of recurrence and predictability of the violation of a citizen's rights "could justify a finding that [the] policymakers' decision not to train an officer reflected 'deliberate indifference' to the obvious consequence of the policymakers' choice – namely, a violation of a specific constitutional or statutory right." <u>Kline</u>, 255 Fed.Appx. at 629 (quoting <u>Board of County Commissioners of Bryan County v. Brown</u>, 520 U.S. 397, 409, 117 S.Ct. 1382, 1391 137 L.Ed.2d 626, 642 (1997)).

Plaintiff's purported cause of action under Section 1983 in Count III alleges a violation of his rights under Section 1981,[43] but fails to state a "failure to train" <u>Monell</u> claim under either a "pattern of violations" theory or the "single violation" theory. The single paragraph referring to the Borough of Columbia's training program[44] avers that the alleged deficiency is in the area of lawful arrests and post-arrest procedures including contact with arrestees' employment contracts, and that the allegedly deficient training constitutes deliberate indifference to the rights of Brian White, and is a policy, custom, or practice of the Borough of Columbia for purposes of imposing municipal liability.

### Pattern-of-Violations Theory

Regarding a "pattern of violations" theory, the Complaint is devoid of any reference to any other incident involving plaintiff or any other person, wherein a Borough of Columbia police officer or employee intentionally interfered with an individual's right to make or enforce a contract because of that individual's race. The paragraph alleging deficient training mentions no other person, nor citizens generally, whose rights were violated because the Borough's deficient training.[45]

---

[43]    Plaintiff's Brief at page 10-11.

[44]    Complaint ¶ 24.

[45]    <u>See</u> Complaint ¶ 24.

Furthermore, the Complaint does not plead facts sufficient to show, or support a reasonable inference, that Sergeant Brommer's actions were anything more than a one-time occurrence. The facts pled describe a single incident, which is by definition insufficient, pursuant to <u>Twombly</u>, <u>supra</u>, to state a "failure to train" <u>Monell</u> claim under a "pattern of violations" theory.

## Single-Violation Theory

The Complaint is also insufficient regarding a "single violation" theory. Plaintiff avers lack of adequate training in the area of arrests and post-arrest procedures for officers in connection with a suspect's or arrestee's employment.[46]

Occasions for officer-employer interaction likely recur in the course of police investigations, perhaps even with sufficient frequency to make training officers on handling them desirable. However, plaintiff's averments do not show, or support a reasonable inference, that the Borough of Columbia's failure to train its officers (to not purposefully interfere with an arrestee's right to make and enforce contracts because of the arrestee's race) caused Sergeant Brommer to call the owner of the Riverview Bar & Grill and thereby interfere with plaintiff's Section 1981 rights.

---

[46]     Complaint ¶ 24.

Averments supporting that position would be required

for plaintiff to state a "failure to train" <u>Monell</u> claim against

the Borough of Columbia for violation of his Section 1981 rights

based on a "single violation" theory.[47]

Because the Complaint does not state a "failure to

train" <u>Monell</u> claim on either a "pattern of violations" or a

"single violation" theory, I grant defendants' motion and dismiss

plaintiff's claim for failure to state a Section 1983 <u>Monell</u>

claim against the Borough of Columbia for violating plaintiff's

Section 1981 rights.  However, I grant plaintiff leave to amend

his Complaint to clearly aver the factual and legal basis for a

---

[47]     Plaintiff must include factual averments showing or supporting a
reasonable inference that "the deficiency in training actually caused
[Sergeant Brommer's] indifference" to plaintiff's Section 1981 rights.
<u>Harris</u>, 498 U.S. at 391, 109 S.Ct. at 1206, 103 L.Ed.2d at 428.

     The United States Supreme Court described the requisite causation
analysis as follows:

> Would the injury have been avoided had the employee been
> trained under a program that was not deficient in the
> identified respect?  Predicting how a hypothetically well-
> trained officer would have acted under the circumstances may
> not be an easy task for the factfinder, particularly since
> matters of judgment may be involved, and since officers who
> are well trained are not free from error and perhaps might
> react very much like the untrained officer in similar
> circumstances.  But the judge and jury, doing their
> respective jobs, will be adequate to the task.

<u>Id.</u>

     Here, plaintiff asserts that: (1) Borough of Columbia training is
deficient, Complaint ¶ 24; and (2) Sergeant Brommer contacted plaintiff's
employer with the intent to discriminate because plaintiff is African-
American.  Complaint ¶ 36.  Plaintiff's Complaint contains no averment that
the training deficiency caused Sergeant Brommer to take the actions alleged in
this case.  Moreover, the conclusory nature of the averments regarding the
deficient training and Sergeant Brommer's discriminatory intent do not support
a reasonable inference that the former caused the latter.

"failure to train" <u>Monell</u> claim against the Borough of

Columbia.[48]

<u>Count IV - Intentional Infliction of Emotional Distress</u>

Count IV alleges a cause of action for intentional

infliction of emotional distress ("emotional distress")[49] only

against defendant Sergeant Brommer.[50]  Defendants seek dismissal

of Count IV because Sergeant Brommer's alleged conduct was not

extreme and outrageous as a matter of law, and because plaintiff

---

[48]    If plaintiff chooses to amend his Complaint regarding his <u>Monell</u>
claim, he should clarify whether he is pursuing his "failure to train" claim
under a "pattern of violations" theory, a "single violation" theory, or both,
and aver sufficient facts to support the theory or theories pursued.

Finally, as defendants correctly noted in Defendants' Reply Brief
at page 3, if plaintiff asserts that the Borough of Columbia has an express
policy or program that trains officers to violate arrestee's Section 1981
rights, then plaintiff should state the allegation clearly and must plead
sufficient factual matters to state a claim under <u>Twombly</u>, <u>supra</u>.

[49]    For ease of reference, use of the term "emotional distress"
throughout this Opinion will refer to intentional infliction of emotional
distress (as distinguished from negligent infliction of emotional distress).

[50]    It is not entirely clear from the Complaint whether plaintiff
alleges that both defendants are, or Sergeant Brommer individually, is liable
for intentional infliction of emotional distress.  Complaint ¶¶ 41, 54-54.
Plaintiff's Brief clarifies his position that the intentional infliction of
emotional distress claim is against Sergeant Brommer individually.
Plaintiff's Brief at page 20.

Specifically, the prayer for relief in Count IV of the Complaint,
immediately after paragraph 41, states that plaintiff "prays for relief
against Defendants as hereinafter set forth in the prayer for relief."  The
prayer for relief referred to in the Count IV prayer for relief is contained
in paragraphs 53-55 in the final section of the Complaint designated "<u>PRAYER
FOR RELIEF</u>".  It requests that the court "[a]ward nominal and compensatory
damages to plaintiff" without reference to a specific claim asserted, and then
goes on to request "punitive damages against Defendant Brommer in his
individual capacity for his outrageous conduct and his intentional infliction
of mental anguish and emotional distress."  Complaint ¶¶ 53 and 54.

In response to the municipal defendant's assertion of governmental
immunity on Counts IV-VI, plaintiff asserts clearly that he "states these
claims only against [defendant] Brommer."  Plaintiff's Brief at page 20.

pled no facts supporting a reasonable inference that he suffered, or is suffering from, emotional distress and that such distress is or was severe.

## Severe Emotional Distress

Addressing defendants' second contention first, I conclude that plaintiff fails to state an emotional distress claim because he has not sufficiently pled the requisite harm. Specifically, the Complaint avers that Sergeant Brommer "intended to inflict emotional distress on Brian White when he telephoned Brian White's employer....  As a result, Brian White was terminated and suffered, and continues to suffer, severe emotional distress."[51]

The Supreme Court of Pennsylvania has stated that to prevail on an emotional distress claim, plaintiff "must, at the least, demonstrate intentional[,] outrageous or extreme conduct by the defendant, which causes severe emotional distress to the plaintiff."  Reeves v. Middletown Athletic Association, 866 A.2d 1115, 1122 (Pa.Super. 2004)(citing Hoy v. Angelone, 554 Pa. 134, 151, 720 A.2d 745, 754 (Pa. 1998)).

Plaintiff must suffer some type of resulting physical harm because of the defendant's outrageous conduct.  Reeves, 866 A.2d at 1122-1123 (citing Fewell v. Besner, 444 Pa.Super. 559, 569, 664 A.2d 577, 582 (Pa.Super. 1995)); see

---

[51]     Complaint ¶¶ 40-41.

<u>Kazatsky v. King David Memorial Park, Inc.</u>, 515 Pa. 183, 197, 527 A.2d 988, 995 (Pa. 1987).

The Complaint avers that as a result of Sergeant Brommer's conduct, plaintiff "suffered, and continues to suffer, severe emotional distress."[52]  Paragraph 41 of the Complaint is nothing more than a conclusory recitation of two elements of an emotional distress claim, namely causation and the requisite level of harm.  As such, it is insufficient under <u>Twombly</u>, <u>supra</u>, to allege either element.

Even if the chronology of the well-pled facts supported a reasonable inference of causation, plaintiff's Complaint is entirely silent as to how this "severe emotional distress" manifested itself in plaintiff.  Therefore, I grant defendants' motion and dismiss Count IV for failure to adequately plead harm.  However, I grant plaintiff leave to amend his Complaint to clearly aver what physical harm he suffered, if any, because of the alleged outrageous conduct of defendant Brommer.

### Extreme and Outrageous Conduct

Defendants also argue that Sergeant Brommer's alleged conduct was not "extreme and outrageous" as a matter of law and that plaintiff's emotional distress claim must, therefore, be dismissed.  Specifically, defendants argue that there "is no known reported decision holding that conduct that merely sounds

---

[52]     Complaint ¶ 41.

in defamation rises to the 'extreme and outrageous conduct'
necessary to form the basis of a cause of action for intentional
infliction of emotional distress."[53]  Defendants offer several
cases which they contend are analagous to the present case and
which establish that Sergeant Brommer's conduct cannot be
"extreme and outrageous" as a matter of law.[54]

The cases upon which defendants rely for their argument
that Sergeant Brommer's conduct cannot be found "extreme and

---

[53]     Defendants' Brief at pages 5-6.

[54]     In <u>Gordon v. Lancaster Osteopathic Hospital Association</u>,
340 Pa.Super. 253, 489 A.2d 1364 (Pa.Super. 1985), a group of doctors sent a
no-confidence letter to hospital administrators expressing concerns regarding
their supervisor's professional abilities.  The Superior Court of Pennsylvania
held that publication of the no-confidence letter did not rise to the "level
of atrocity" required to satisfy the "extreme and outrageous" element of an
emotional distress claim.  <u>Gordon</u>, 340 Pa.Super. at 266-267, 489 A.2d at 1371.

In <u>Salerno v. Philadelphia Newspapers, Inc.</u>, 377 Pa.Super. 83,
546 A.2d 1168 (Pa.Super. 1988), the Superior Court found that the publication
of a newspaper article about the plaintiff, a shooting victim, which implied
that plaintiff was shot because his son had testified against a mafia boss did
not constitute "extreme and outrageous conduct" sufficient to support an
emotional distress claim.  <u>Salerno</u>, 377 Pa.Super. at, 92-93, 546 A.2d at 1172-
1173.

In <u>Britt v. Chestnut Hill College</u>, 429 Pa.Super. 263, 632 A.2d 557
(Pa.Super. 1993), the Superior Court found that a professor's conduct toward
the graduate student-plaintiff Joseph Britt was not "extreme and outrageous"
as a matter of law and therefore insufficient to support plaintiff's emotional
distress claim.  <u>Britt</u>, 429 Pa.Super. at 271-272, 632 A.2d at 561-562.

Plaintiff Britt enrolled in a required course, Gender
Stereotyping, which Professor Klee taught.  Plaintiff alleged that after
expressing his opinion that a particular classroom exercise was "improper,"
Professor Klee "did everything in his power to sabotage [plaintiff]'s
reputation and academic career" by (1) giving plaintiff a "C" grade in the
Gender Stereotyping course; (2) arranging to be assigned as plaintiff's
academic advisor; and (3) revoking, and convincing other professors to revoke,
pre-approved credits, which caused plaintiff not to graduate on time.  <u>Britt</u>,
429 Pa.Super. at 265-266, 632 A.2d at 558.

outrageous" as a matter of law, upon review, do not compel such a finding.

While <u>Gordon v. Lancaster Osteopathic Hospital Association</u>, <u>supra</u>, involved criticism of the plaintiff's employment qualifications, the criticism came from the plaintiff's subordinates, not from a law enforcement officer. More importantly, the plaintiff in <u>Gordon</u> did not, as plaintiff does here, allege that statements regarding his professional fitness constituted intentional racial discrimination.

Likewise, <u>Salerno v. Philadelphia Newspapers, Inc.</u>, <u>supra</u>, involved neither the communication of derogatory information from a person in a position of authority, like Sergeant Brommer, to the plaintiff's employer, nor the allegation that any such communication was motived by racial animus.

Finally, <u>Britt v. Chestnut Hill College</u>, <u>supra</u>, also fails to compel the finding sought by defendants. Although an academic advisor may also be considered a figure of some authority, whose conduct might be considered extreme or outrageous in light of that position, plaintiff made no allegations that Professor Klee's actions were intended to discriminate against plaintiff because of his race. <u>Britt</u>, <u>supra</u>; <u>see</u> Restatement (Second) of Torts, § 46, cmt. e.

Pennsylvania appellate courts define "extreme and outrageous conduct" as conduct "so outrageous in character, so

extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in civilized society." Reeves, 866 A.2d at 1123 (quoting Hoy, 554 Pa. at 151, 720 A.2d at 754).[55]

---

[55] Although defendants argue that plaintiff's emotional distress claim sounds in defamation and Sergeant Brommer's conduct is therefore not "extreme and outrageous," plaintiff's Complaint asserts several claims against Sergeant Brommer in addition to defamation, including malicious prosecution.

Trial courts in this circuit, applying Pennsylvania law, have recently found challenged conduct to be "extreme and outrageous" in cases where emotional distress claims were asserted in addition to malicious prosecution claims and other claims sounding in police misconduct. See O'Fee v. City of Philadelphia, 2009 WL 3172759, at *6-7 (E.D.Pa. October 02, 2009)(Kelly, S.J.); O'Hara v. Hanley, 2009 WL 2043490, at *13-14 (W.D.Pa. July 08, 2009)(Fischer, J.); Paterson v. City of Philadelphia, 2009 WL 1259968, *5 (E.D.Pa. May 01, 2009)(Jones, J.); but see Michtavi v. United States, 2009 WL 578535, at *7 (M.D.Pa. March 04, 2009)(Jones, J.).

For example, in O'Fee the court found the requisite level of outrageousness to state an emotional distress claim because "the prosecution of a police sergeant[, O'Fee,] on false grounds in retaliation for his cooperation in an investigation into police corruption would cause an average member of the community to resent the individual who initiated the prosecution and lead him to exclaim, 'Outrageous!'...." 2009 WL 3172759, at *7.

Here, likewise, recitation of the facts, particularly the racially motivated, post-arrest phone call to plaintiff's employer which was intended to, and did, get plaintiff fired, could certainly cause resentment and cause an average member of the community to exclaim "Outrageous!".

In O'Hara, the court found that plaintiff pled sufficiently outrageous conduct to state a claim for emotional distress. There, plaintiff alleged that a county Children and Youth Services Department investigation issued a finding that plaintiff was an "indicated sexual perpetrator" even though the department employee-defendants knew the assertion to be false. 2009 WL 2043490, at *14. The youth services finding led to the removal of two children from plaintiff's custody, his arrest, incarceration, and a criminal trial at which the judge directed a verdict in plaintiff's favor on fourteen of eighteen counts and plaintiff was acquitted of the remaining counts. 2009 WL 2043490, at *1-3, 14.

Although the allegations of rape and sexual assault of a minor in O'Hara are of a more serious nature than the crimes for which plaintiff here was arrested and charged, plaintiff here avers that Sergeant Brommer arrested him despite knowing he had no probable cause and then, motivated by racial animus, called plaintiff's employer to have plaintiff fired based on that groundless arrest and groundless alleged unfitness to work.

(Footnote 55 continued):

The gravamen of plaintiff's emotional distress claim is that Sergeant Brommer acted outrageously by: (1) proceeding to the Riverview Bar & Grill, plaintiff's place of employment, only to discover that he was not there; (2) locating plaintiff, who was walking home from patronizing the Riverview Bar & Grill, having plaintiff stopped and brought back to his place of employment; (3) arresting plaintiff at his place of employment despite the knowledge that plaintiff was neither intoxicated, nor behaving in a disorderly manner; (4) calling plaintiff's employer to tell the owner that plaintiff had been arrested for public drunkenness and disorderly conduct; (5) asserting that plaintiff was unfit to work as doorman providing security; (6) requesting the owner to terminate plaintiff's employment; and (7) making the

---

(Continuation of footnote 55):

         In Paterson, the court found plaintiff's allegations that defendants "manipulated the results of a crucial interview with a potentially abused child in order to manufacture probable cause" to arrest plaintiff was sufficiently outrageous or atrocious to support an emotional distress claim.

         By contrast, in Michtavi, the court refused to find defendant's alleged conduct sufficient to support an emotional distress claim. There, plaintiff alleged that "prison officials made him depressed by failing to prevent other inmates from...conning him out of money." 2009 WL 578535, at *7. The court stated that this was not "anything close to the extreme and outrageous conduct that would give rise to a claim" for emotional distress. 2009 WL 578535, at *7.

         Here, plaintiff alleges that Sergeant Brommer arrested plaintiff at his place of employment without probable cause and then, because plaintiff is an African-American, called plaintiff's employer to have him fired. Unlike the prison official's alleged failure to act in Michtavi, Sergeant Brommer's racially motivated affirmative conduct could be found to be extreme and outrageous.

phone call, assertions, and requests to the owner because of plaintiff's race.[56]

Taking these averments as true, as I am required to do, I conclude that, as a matter of law, Sergeant Brommer's conduct was sufficiently "extreme and outrageous" to support plaintiff's emotional distress claim. Therefore, I deny defendants' motion to dismiss plaintiff's emotional distress claim on this ground.

## Count V - Interference with Contract

Count V alleges that only defendant Sergeant Brommer is liable for tortious interference with a contractual relationship. Specifically, this count avers that Sergeant Brommer telephoned plaintiff's employer the day after plaintiff was arrested. Plaintiff claims that Sergeant Brommer advised plaintiff's employer that plaintiff had been arrested for public drunkenness and disorderly conduct and that plaintiff was unfit to work as a doorman providing security.

Plaintiff alleges that this telephone call constituted tortious interference with plaintiff's contractual relationship with his employer.[57] Defendants seek dismissal of Count V because Pennsylvania does not recognize a claim for tortious

---

[56] See Complaint ¶¶ 10-22, 34-37.

[57] Complaint ¶¶ 42-48.

interference with a contract based on alleged interference with an ongoing, at-will employment relationship.[58]

In order to assess defendants' motion, I must determine whether the Supreme Court of Pennsylvania would recognize a cause of action for tortious interference with an ongoing, at-will employment relationship. The Supreme Court of Pennsylvania has not ruled on the issue and the Superior Court of Pennsylvania, an intermediate appellate court, has ruled inconsistently on the subject. Compare <u>Hennessy v. Santiago</u>, 708 A.2d 1269, 1278-1279 (Pa.Super. 1998), with <u>Curran v. Children's Services Center, Inc.</u>, 396 Pa.Super. 29, 40, 578 A.2d 8, 13 (Pa.Super. 1990), and <u>Yaindl v. Ingersoll-Rand Company</u>, 281 Pa.Super. 560, 575 n.6, 422 A.2d 611, 619 n.6 (Pa.Super. 1980).

As a United States District Court assessing state-law claims and exercising supplemental jurisdiction, I am obligated to apply the substantive law of Pennsylvania. <u>See</u> <u>Erie Railroad Co. v. Tompkins</u>, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

If the Supreme Court of Pennsylvania has not addressed a precise issue, a prediction must be made, taking into consideration "relevant state precedents, analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court of the state would decide the issue at hand." <u>Nationwide Mutual Insurance</u>

---

[58]    Defendants' Brief at pages 4-5.

Company v. Buffetta, 230 F.3d 634, 637 (3d Cir. 2000) (citation omitted).

"The opinions of intermediate state courts are 'not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court in the state would decide otherwise." Id. at 637 (citing West v. American Telephone and Telegraph Co., 311 U.S. 223, 61 S.Ct. 179, 85 L.Ed. 139 (1940)).

Upon review, I predict that the Supreme Court of Pennsylvania will recognize a cause of action for tortious interference with an existing, at-will employment relationship. My prediction is based on consideration of the Opinions of the Superior Court of Pennsylvania in Hennessy and Yaindl, the adoption of Restatement (Second) of Torts § 766 by the Supreme Court of Pennsylvania, and the Opinions of several federal district courts called upon to make the same prediction.

### Pennsylvania Appellate Law on At-Will Employment

In Yaindl, supra, the Superior Court of Pennsylvania stated that, "[o]f course, an action for intentional interference with the performance of a contract lies even though the contract interfered with is terminable at the will of the parties." 281 Pa.Super. at 575 n.6, 422 A.2d 611 at 619 n.6 (citing

Restatement (Second) of Torts § 766, cmt. g).[59]  Any confusion as
to whether a tortious interference cause of action exists under
these circumstances stems from the Superior Court's subsequent
Opinion in Hennessy, supra.

In Hennessy, plaintiff sought to assert such a claim,
but was rebuffed.  The Superior Court reasoned that the statement
in Yaindl quoted above was dicta.  The Superior Court further
stated that the Court was aware of no case where tortious
interference had been "extended to the ambit of at-will
employment."  Hennessy, 708 A.2d at 1278-1279.  On those grounds
the Superior Court held that "an action for intentional
interference with performance of a contract in the employment
context applies only to interference with a *prospective*

_____

        [59]     "With respect to tortious interference claims, Pennsylvania has
specifically adopted Section 766 of the Restatement (Second) of Torts."
Odyssey Waste Services, LLC. v. BFI Waste Systems of North America,
2007 U.S.Dist. LEXIS 13530, at *19 (E.D.Pa. February 27, 2007)(Pratter, J.)
(citing Restatement (Second) of Torts § 766; Adler, Barish, Daniels, Levin &
Creskoff v. Epstein, 482 Pa. 416, 430-432, 393 A.2d 1175, 1183 (Pa. 1978),
superceded by statute on other grounds as recognized in Law Offices of
William W. McVay v. Weisman, Goldman, Bowen Gross, LLP, 2006 Pa.D&C. Dec.
LEXIS 468, at *10 (Allegheny Ct.Com.P. December 16, 2006)(Friedman, J.)).

        Section 766 of the Restatement (Second) of Torts reads:

                § 766. Intentional Interference With Performance Of Contract
                By Third Person

                One who intentionally and improperly interferes with the
                performance of a contract (except a contract to marry)
                between another and a third person by inducing or otherwise
                causing the third person not to perform the contract, is
                subject to liability to the other for the pecuniary loss
                resulting to the other from the failure of the third person
                to perform the contract.

Restatement (Second) of Torts § 766 (1979).

employment relationship whether at-will or not, not a *presently existing* at-will employment relationship." Id. at 1279 (emphasis added).

While Hennessy correctly characterized Yaindl's directive as "mere dicta", I conclude that the Yaindl Court correctly analyzed the matter. Moreover, Hennessy did not address additional statements in Yaindl which also suggest that the Supreme Court of Pennsylvania would recognize a cause of action under the instant circumstances. Specifically, in Yaindl, the Superior Court stated that the Supreme Court of Pennsylvania "has repeatedly looked to the Restatement as authority for the elements of a cause of action for intentional interference with existing contract relations, and it has apparently adopted sections 766 and 767 of the Second Restatement as accurate embodiments of the law of this Commonwealth." Yaindl, 281 Pa.Super. at 581 n.11, 422 A.2d at 622 n.11 (citing Epstein, 482 Pa. at 430 n.13, 393 A.2d at 1182 n.13).[60]

Despite the Supreme Court of Pennsylvania's pre-Hennessy adoption of Restatement (Second) of Torts § 766, see

_____

[60] Numerous courts recognize that Restatement (Second) of Torts § 766 has been adopted by the Supreme Court of Pennsylvania and permits causes of action for tortious interference with both existing and prospective contractual relations. E.g., United States Healthcare v. Blue Cross of Greater Philadelphia, 898 F.2d 914, 924-925 (3d Cir. 1990); Green v. Interstate United Management Services Corporation, 748 F.2d 827, 831 (3d Cir. 1984); Thompson v. US Airways, Inc., 2010 U.S.Dist. LEXIS 59088, at *27 (E.D.Pa. June 15, 2010)(Pratter, J.); Daniel Adams Associates, Inc. v. Rimbach Publishing, Inc., 360 Pa.Super. 72, 78-79, 519 A.2d 997, 1000 (Pa.Super. 1987).

<u>Thompson Coal Company v. Pike Coal Company</u>, 488 Pa. 198, 207-208,

412 A.2d 466, 470-471 (Pa. 1979); <u>Epstein</u>, 482 Pa. at 430 n.13,

393 A.2d at 1182 n.13, the Superior Court Opinion in <u>Hennessy</u>

does not expressly mention or discuss Section 766 of the

Restatement.  <u>See</u> <u>Hennessy</u>, 798 A.2d at 1278.  However, <u>Triffin</u>

<u>v. Janssen</u>, 426 Pa.Super. 57, 626 A.2d 571 (Pa.Super. 1993), the

case which <u>Hennessy</u> cites for defining the elements of a claim

for tortious interference with an existing contract, notes that

Pennsylvania courts have "traditionally applied the Restatement

(Second) of Torts in reviewing claims for intentional

interference with contractual relations.  <u>Triffin</u>,

426 Pa.Super. at 63 n.4, 626 A.2d at 574 n.4 (collecting

cases).[61]

    The adoption of Section 766 of the Restatement (Second)

of Torts by the Supreme Court of Pennsylvania, and the failure of

the Superior Court in <u>Hennessy</u> to discuss its implications are

significant in light of two comments to Section 766.

Specifically, Comment g. to Section 766 is labeled "Contracts

_____

[61]     <u>Hennessy</u> cites <u>Triffin</u> for the necessary elements in a tortious
interference action.  The line of cases leading to <u>Triffin</u>'s statement of
those elements begins with a 1971 Opinion from the Supreme Court of
Pennsylvania citing the first Restatement's version of Section 766 and a draft
of the Restatement (Second)'s version of Section 766.  <u>Glenn v. Point Park
College</u>, 441 Pa. 474, 479-482, 272 A.2d 895, 898-899 (1971) (citing both
Restatement of Torts § 766 (1939), and a tentative draft of Restatement
(Second) of Torts § 766 (1979)), cited in <u>R.P. Russo Contractors & Engineers,
Inc. v. C.J. Pettinato Realty & Development, Inc.</u>, 334 Pa.Super. 72, 80,
482 A.2d 1086, 1090 (Pa.Super. 1984), cited in <u>Neish v. Beaver Newspapers,
Inc.</u>, 398 Pa.Super. 588, 599, 581 A.2d 619, 625 (Pa.Super. 1990), cited in
<u>Triffin</u>, 426 Pa.Super. at 63, 626 A.2d at 574, cited in <u>Hennessy</u>,
708 A.2d at 1278.

terminable at-will" and states that when the terms of a contract, express or implied, permit a third party to terminate the agreement at-will, "[u]ntil he has so terminated it, the contract is valid and subsisting, and the defendant may not improperly interfere with it." Restatement (Second) of Torts § 766, cmt. g. (1979).

However, "that the contract is terminable at-will...is to be taken into account in determining the damages that the plaintiff has suffered by reason of its breach." Id. Thus, Comment g. makes clear that Section 766 includes a cause of action for tortious interference with an at-will relationship, and the only limitation created by the at-will nature of the relationship may be in the prospective damages plaintiff can prove.

Moreover, Comment b. to Section 766 states that "there is a general duty not to interfere intentionally with another's reasonable business expectancies of trade with third persons, whether or not they are secured by contract...." Restatement (Second) of Torts § 766, cmt. b. (1979).

Thus, Comment b. bolsters plaintiff's position that Section 766 provides a cause of action for tortious interference with an existing, at-will employment relationship. Also, it is logical to assume that an at-will employee has a reasonable expectation that another will not intentionally interfere with

that relationship. The questionable foundation for the rule announced by the Superior Court in Hennessy, and its apparent conflict with established precedent leads me to predict that the Supreme Court of Pennsylvania will reject Hennessy.

### At-Will Employment

District Courts in the Eastern District of Pennsylvania have reached conflicting conclusions when predicting whether the Supreme Court of Pennsylvania will follow Yaindl or Hennessy. Cases which predict that the Supreme Court of Pennsylvania will following Yaindl and recognize a cause of action for tortious interference with an existing, at-will employment relationship include Brooks v. Systems Manufacturing Corporation, 2004 WL 2028755, at *5-8 (E.D.Pa. September 10, 2004) (O'Neill, J.); McClease v. R.R. Donnelley & Sons Company, 226 F.Supp.2d 695, 703-704 (E.D.Pa. 2002)(Dalzell, J.); Gallas v. Supreme Court of Pennsylvania, 1998 U.S.Dist. LEXIS 14172, at *5-15 (E.D.Pa. August 25, 1998)(Yohn, J.).

Cases which predict that the Supreme Court of Pennsylvania will follow Hennessy and rule that no such cause of action exists include Carter v. Philadelphia Stock Exchange, 1999 U.S.Dist. LEXIS 13660, at *17-18 (E.D.Pa. August 26, 1999)(Ludwig, J.); Parvensky-Barwell v. County of Chester, 1999 U.S.Dist. LEXIS 5624, at *21 (E.D.Pa. April 13, 1999) (Buckwalter, J.); Buckwalter v. ICI Explosives USA,

1998 U.S.Dist. LEXIS 4369, at *3-5 (E.D.Pa. March 25, 1998)

(Van Antwerpen, J.) ("Buckwalter II"); Buckwalter v. ICI

Explosives USA, 1998 U.S.Dist. LEXIS 276, at *56-57 (E.D.Pa.

January 8, 1998)(Van Antwerpen, J.) ("Buckwalter I").

I find the reasoning, and thus the predictions, in

Brooks, supra, McClease, supra, and Gallas, supra, to be

persuasive.[62] Each Opinion discusses the deficiencies of the

reasoning in Hennessy - specifically the failure to adequately

address Yaindl and Curran as prior, contrary authority, and the

failure to discuss the Supreme Court of Pennsylvania's well-

recognized adoption of Section 766 of the Restatement (Second) of

Torts in construing tortious interference with contract claims.

See Brooks, 2004 WL 2028755 at *6; McClease, 226 F.Supp.2d at 704

n.11; Gallas, 1998 U.S.Dist. LEXIS 14172 at *9-14.

---

[62]    In addition, the district court's Opinion in, Beyda v. USAIR,
Inc., 697 F.Supp. 1394, 1398 (E.D.Pa. 1988)(Weber, J.), is noteworthy.  In
Beyda, a pre-Hennessy case, defendants argued that plaintiff was "unable to
establish a cause of action for interference with a contractual relationship
because plaintiff was merely a probationary employee, terminable at-will."
Id.  The court responded:

> The argument is ingenious but specious.  Plaintiff had a
> contractual relationship for employment, albeit terminable
> at-will.  If [the defendants] intentionally caused
> [plaintiff's employer] to terminate that contract...the tort
> claim has been established.  Though the at-will doctrine
> protects the employer from contractual liability, it offers
> no comfort to a third party tortfeasor whose wrongful
> conduct interferes with the employment relationship.  The
> policies which sustain the at-will doctrine, whatever their
> wisdom or lack of it, are not intended to benefit a party
> apart from the employment relationship.

Id.; see Stineman v. Kennedy House, Inc., 1990 U.S.Dist. LEXIS 16729, at *13
(E.D.Pa. December 10, 1990)(Gawthrop, J).

In sum, I predict that the Supreme Court of
Pennsylvania will recognize a cause of action for tortious
interference with an existing, at-will employment relationship
for the following reasons: (1) the Supreme Court of Pennsylvania
has recognized and does rely on the Restatement (Second) of Torts
§ 766 in construing tortious interference claims; (2) Comments b.
and g. of Section 766 of the Restatement support recognition of
plaintiff's claim; (3) <u>Hennessy</u> concedes that a cause of action
exists for tortious interference with a *prospective*, at-will
employment relationship.  Accordingly, it would be logically
inconsistent to protect *prospective*, at-will employment from
third-party interference but not to protect *existing*, at-will
employment relationships from such interference; and (4) Eastern
District Courts in well-reasoned opinions in <u>Brooks</u>, <u>McClease</u> and
<u>Gallas</u> have engaged in the predictive analysis required by the
Third Circuit in <u>Nationwide Mutual Insurance Company v. Buffetta</u>,
<u>supra</u>, and have concluded that the Supreme Court of Pennsylvania
is likely to reject <u>Hennessy</u> and permit a cause of action under
these circumstances.  Therefore, I deny defendant's motion to
dismiss Count V.

Count VI - Defamation

Count VI of plaintiff's Complaint alleges defamation
against only defendant Sergeant Brommer.  Specifically, plaintiff
alleges that he was defamed by Sergeant Brommer's telephone

conversation with plaintiff's employer on the day following plaintiff's arrest.  Plaintiff contends that he was defamed when defendant Brommer advised plaintiff's employer that plaintiff had been arrested for public drunkenness and disorderly conduct and that plaintiff was unfit to work as a doorman providing security.

Defendants argue that plaintiff fails to state a defamation claim because pure opinion, without more, does not create a cause of action.  Defendants also argue that plaintiff failed to demonstrate that Sergeant Brommer's communication of his opinion that plaintiff was unfit to work as doorman could reasonably be understood to imply the existence of undisclosed defamatory facts.[63]

In response, plaintiff argues that Sergeant Brommer's statements constitute defamation *per se* because defendant Brommer's statements imputed a "criminal offense" and "business misconduct" to plaintiff.[64]  However, plaintiff's argument does not address defendants' particular challenge to his defamation claim.

Specifically, defendants contest the first element of a defamation claim under 42 P.S. § 8343(a),[65] namely "the

---

[63]    Defendants' Brief at pages 8-11.

[64]    Plaintiff's Brief at page 19 (quoting Clemente v. Espinosa, 749 F.Supp. 672, 677 (E.D.Pa. 1990)(DuBois, J.).

[65]    Act of July 9, 1976, P.L. 586, No. 142, § 2, as amended 43 P.S. § 8343.

defamatory character of the communication."[66]  However, a finding

of *per se* defamation would only obviate the need for plaintiff to

plead and prove "special harm" caused by the defamatory

publication.  See Clemente, 749 F.Supp. at 677.  Therefore, if

defendants are correct that Sergeant Brommer's statement does not

satisfy the "defamatory character" element, then defendants'

motion to dismiss will be granted regardless of the merit of

plaintiff's argument.

When assessing the defamatory character of a

communication, the court must view the communication in context

to determine "whether the statement was maliciously written or

published and tended to blacken a person's reputation or to

expose him to public hatred, contempt, or ridicule, or to injure

him in his business or profession."  Mathias v. Carpenter,

402 Pa.Super. 358, 361, 587 A.2d 1, 2 (Pa.Super. 1991); see

Feldman v. Lafayette Green Condominium Association,

806 A.2d 497, 500 (Pa.Commw. 2002).

The key in determining defamatory meaning is "the

effect the statement would produce on its intended audience,"

Feldman, 806 A.2d at 500, or in other words, "the impression it

would naturally engender, in the minds of the average persons

among whom it is intended to circulate."  Mathias, 402 Pa.Super.

at 362, 587 A.2d at 2.

---

[66]     Defendant's Brief at pages 8-11.

Here, Sergeant Brommer's intended audience was plaintiff's employer. The context in which the bar owner received the communication was an unsolicited phone call from a police officer. If Sergeant Brommer did not expose plaintiff to public hatred, contempt, or ridicule by informing the owner that plaintiff was "arrested for public drunkenness and disorderly conduct" and was "unfit to work as a doorman/security", defendant Brommer certainly did, according to the Complaint, tend to blacken plaintiff's reputation and injure him in his business or employment.[67] See Mathias, 402 Pa.Super. at 361, 587 A.2d at 2.

However, as defendants note, a statement which merely expresses the speaker's opinion is not defamatory. "Pure" statements of opinion are not defamatory and, therefore, not actionable. Feldman, 806 A.2d at 501. By contrast, "mixed" statements of opinion may be actionable, but only if the statement reasonably implies the existence of undisclosed defamatory facts. Id. (citing Restatement (Second) of Torts § 566, cmt. c. (1977)).[68]

---

[67]    Plaintiff avers that the phone call from Sergeant Brommer was the sole reason he was fired. Complaint ¶¶ 18-19.

[68]    Pennsylvania courts apply Comment c. to Section 566 of the Restatement (Second) of Torts to determine whether a statement of opinion is defamatory. It reads:

> There are two kinds of expression of opinion. *The...pure type[] occurs when the maker of the comment states the facts on which he bases his opinion of the plaintiff and then expresses a comment as to the plaintiff's*

(Footnote 68 continued):

In both <u>Mathias</u>, <u>supra</u>, and <u>Feldman</u>, <u>supra</u>, the court concluded the communications at issue were pure statements of opinion based upon disclosed facts.  In <u>Feldman</u>, the opinion communicated was that plaintiff's behavior constituted "harassment," and the fact, disclosed in a letter from the condo association-defendant, was that the condo owner-plaintiff

(<u>Continuation of footnote 68</u>):

        *conduct, qualifications or character.*  The statement of facts and the expression of opinion based on them are separate matters in this case, and at common law either or both could be defamatory and the basis for an action for libel or slander.  The opinion may be ostensibly in the form of a factual statement if it is clear from the context that the maker is not intending to assert another objective fact but only his personal comment on the facts which he has stated.

        The pure type of expression of opinion may also occur when the maker of the comment does not himself express the alleged facts on which he bases the expression of opinion.  This happens when both parties to the communication know the facts or assume their existence and the comment is clearly based on those assumed facts and does not imply the existence of other facts in order to justify the comment.  The assumption of the facts may come about because someone else has stated them or because they were assumed by both parties as a result of their notoriety or otherwise.

        The second kind...*the mixed type*, is one which, while an opinion in form or context, *is apparently based on facts regarding the plaintiff or his conduct that have not been stated by the defendant or assumed to exist by the parties to the communication.*  Here the expression of the opinion gives rise to the inference that there are undisclosed facts that justify the forming of the opinion expressed by the defendant.  To say of a person that he is a thief without explaining why, may, depending upon the circumstances, be found to imply the assertion that he has committed acts that come within the common connotation of thievery.  To declare, without an indication of the basis for the conclusion, that a person is utterly devoid of moral principles may be found to imply the assertion that he has been guilty of conduct that would justify the reaching of that conclusion.

Restatement (Second) of Torts § 566, cmt. c. (1977) (emphasis added).

"approached another unit owner in a confrontational manner...on May 18, 2000 at approximately 7:30PM." <u>Feldman</u>, 806 A.2d at 499.

Likewise, in <u>Mathias</u>, the court found that the opinion expressed was of the "pure" variety because "*all the facts* upon which the author based his opinion were disclosed in the second paragraph of the column." <u>Mathias</u>, 402 Pa.Super. at 364, 587 A.2d at 3-4 (emphasis added).[69]

Therefore, the crucial question here is whether Sergeant Brommer's description of plaintiff as "unfit to work as a doorman/security" was potentially-actionable "mixed" opinion reasonably implying the existence of undisclosed defamatory facts, or non-actionable "pure" opinion wholly supported by the disclosed fact that plaintiff was arrested for public drunkenness and disorderly conduct.[70]

---

[69]    <u>Mathias</u> involved a suit by several school board members against a local newspaper in which the school board members alleged defamation.  On December 7, 1988, the newspaper published a photo of three school board members smiling as they left a magisterial hearing where two of them were convicted of violating Pennsylvania's Sunshine Law.

On December 8, 1988, a columnist for the paper expressed his regret that the picture was published.  Specifically, the columnist opined that it was more detrimental to show the smiling school board members than it would be to show hardened criminals smiling in a show of contempt for the law because the school board members are presumed to be "leaders of a community's education establishment" and generally upright and law-abiding citizens.  <u>See</u> <u>Mathias</u>, 402 Pa.Super. at 360, 587 A.2d at 1-2.

The court found that the column was "pure" opinion because the entire basis for the columnists opinion was supplied therein: (1) the picture of the board members smiling after the hearing; (2) their conviction for violating the state's open-government law; and (3) the board members as purposed leaders of the community and model citizens.  <u>Mathias</u>, 402 Pa.Super. at 360-365, 587 A.2d at 2-4.

[70]    <u>See</u> Complaint ¶ 18.

Defendants focus solely on Sergeant Brommer's disclosure to plaintiff's employer of the fact that plaintiff "was arrested."[71]  The fact of plaintiff's arrest is averred in paragraph 15 of plaintiff's Complaint and, therefore, taken as true.

However, even accepting, *arguendo*, defendants' narrow focus, I find that informing an individual's employer that the employee "was arrested" reasonably implies the fact of criminal conduct by that individual to justify the arrest.  Sergeant Brommer's statement, as characterized by defendants, reasonably implied the existence of undisclosed defamatory facts, namely criminal conduct by plaintiff justifying his arrest.

In fact, however, plaintiff actually avers that Sergeant Brommer "told the owner/manager that Brian White was *arrested for public drunkenness and disorderly conduct*[.]"[72]  As just discussed, this implies that plaintiff was intoxicated and behaving in a disorderly manner.  Both implications must be considered to be factually false at this stage of the proceedings.[73]

---

[71]    Defendants' Brief at page 11 (citing Complaint ¶ 15).

[72]    Complaint ¶ 18 (emphasis added).

[73]    Plaintiff avers that he was neither intoxicated nor disorderly. Complaint ¶ 16.  Therefore, for the purposes of this motion to dismiss, under the applicable standard of review, the facts reasonably implied by Sergeant Brommer's statement must be considered to be false.

Moreover, taking the facts pled by plaintiff in the light most favorable to him, as I must under the standard of review for a 12(b)(6) motion, Sergeant Brommer failed to disclose the following facts: (1) plaintiff was not at the Riverview Bar & Grill when arrested, but was brought back to his place of employment and then arrested; (2) plaintiff was not intoxicated; (3) plaintiff was not behaving in a disorderly manner; and (4) Sergeant Brommer's request that the bar owner fire plaintiff was motivated, at least in part, by racially discriminatory intent.

As such, for purposes of this motion to dismiss, I cannot find that Sergeant Brommer disclosed all facts upon which he based his opinion, and therefore do not find Sergeant Brommer's statement that plaintiff was unfit to work as a doorman to be unactionable pure opinion. Therefore, I deny the motion of defendant Brommer to dismiss Count VI.

CONCLUSION

For all the foregoing reasons, I grant in part and deny in part defendants' motion to dismiss. I deny defendants' motion to dismiss Counts I, II, V, and VI. I grant defendants' motion to dismiss Counts III and IV. While plaintiff's Monell claim against the Borough of Columbia for violation of his Section 1981 rights in Count III and plaintiff's claim for intentional infliction of emotional distress against Sergeant Brommer in

Count IV are each dismissed, I grant plaintiff leave to file an Amended Complaint to re-plead Counts III and IV consistent with this Opinion.