IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BRIAN WHITE,                        )
                                    )   Civil Action
            Plaintiff               )   No. 09-cv-04353
                                    )
        vs.                         )
                                    )
JACK BROMMER,                       )
BOROUGH OF COLUMBIA and             )
MATTHEW LEDDY,                      )
                                    )
            Defendants              )

                        *   *   *

                  O P I N I O N

JAMES KNOLL GARDNER,
United States District Judge

        This matter is before the court on Motion of Defendants
for Summary Judgment filed April 7, 2011, and Plaintiff's Motion
for Summary Judgment filed April 14, 2011.

        For the following reasons, I grant defendants' motion
and deny plaintiff's.  I conclude that there are no genuine
issues of material fact that would preclude granting summary
judgment in defendants' favor on plaintiff's claims for
unconstitutional seizure, malicious prosecution, violation of
right to contract, violation of equal protection, tortious
interference with a contractual relationship, defamation, or the
Monell[1] claim against the Borough of Columbia.

---

        [1]    Monell v. Department of Social Services, 436 U.S. 658,
98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

JURISDICTION

Jurisdiction is based upon federal question jurisdiction pursuant to 28 U.S.C. § 1331.  Plaintiff brings claims under 42 U.S.C. §§ 1981 and 1983.  This court also properly has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over plaintiff's state law claims, which are part of the same case or controversy.

VENUE

Venue is proper pursuant to 28 U.S.C. § 1391(b) because the events giving rise to these claims occurred in Lancaster County, Pennsylvania, which is located in this judicial district.

PROCEDURAL HISTORY

Plaintiff initiated this action by filing a six-count Complaint on September 24, 2009.  Defendants filed a partial motion to dismiss on November 19, 2009.  By Order and Opinion filed September 30, 2010, I denied the motion in part and granted it in part, without prejudice for the plaintiff to re-plead with an amended complaint.

On October 22, 2010, plaintiff filed a six-count Amended Complaint.  Count One alleges unconstitutional seizure pursuant to 42 U.S.C. § 1983, in violation of the Fourth and Fourteenth Amendments of the United States Constitution.  Count Two alleges malicious prosecution in violation of the Fourth and Fourteenth Amendments pursuant to 42 U.S.C. § 1983.  Count Three

alleges violations of equal protection and right to contract pursuant to 42 U.S.C. §§ 1981 and 1983.  Counts Four, Five and Six are Pennsylvania state law claims for intentional infliction of emotional distress, tortious interference with a contractual relationship and defamation, respectively.

On April 7, 2011, the Motion of Defendants for Summary Judgment was filed, together with Defendants' Brief in Support of Their Motion for Summary Judgment and Defendants' Statement of Undisputed Material Facts.  Plaintiff's Brief in Response to Defendants' Motion for Summary Judgment was filed April 28, 2011.

On April 14, 2011, Plaintiff's Motion for Summary Judgment was filed, together with Plaintiff's Memorandum of Law in Support of His Motion for Summary Judgment.  Defendants' Brief in Opposition to Plaintiff's Motion for Summary Judgment and Defendants' Response to Plaintiff's Material Facts for Summary Judgment were filed on May 4, 2011.

<u>STANDARD OF REVIEW</u>

In considering a motion for summary judgment, the court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c).  <u>See also</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247, 106 S.Ct. 2505,

-3-

2509-2510, 91 L.Ed.2d 202, 211 (1986); <u>Federal Home Loan Mortgage Corporation v. Scottsdale Insurance Company</u>, 316 F.3d 431, 443 (3d Cir. 2003).  Only facts that may affect the outcome of a case are "material".  Moreover, all reasonable inferences from the record are drawn in favor of the non-movant.  <u>Anderson</u>, 477 U.S. at 255, 106 S.Ct. at 2513, 91 L.Ed.2d at 216.

Although the movant has the initial burden of demonstrating the absence of genuine issues of material fact, the non-movant must then establish the existence of each element on which it bears the burden of proof.  <u>See</u> <u>Watson v. Eastman Kodak Company</u>, 235 F.3d 851, 857-858 (3d Cir. 2000).

Plaintiffs cannot avert summary judgment with speculation or by resting on the allegations in their pleadings, but rather they must present competent evidence from which a jury could reasonably find in their favor.  <u>Ridgewood Board of Education v. N.E. for M.E.</u>, 172 F.3d 238, 252 (3d Cir. 1999); <u>Woods v. Bentsen</u>, 889 F.Supp. 179, 184 (E.D.Pa. 1995).

<u>FACTS</u>

Based upon the pleadings, record papers, exhibits, and defendants' uncontested concise statement of facts, the pertinent facts are as follows.[2]

---

[2]    By my Rule 16 Status Conference Order dated February 24, 2011, any party filing a motion for summary judgment was required to file a brief, and "in addition to a brief, a separate short concise statement, in numbered paragraphs, of the material facts about which the moving party contends there

(<u>Footnote 2 continued</u>):

(<u>Continuation of Footnote 2</u>):

is no genuine dispute." The concise statement of facts was required to be supported by citations to the record and, where practicable, relevant portions of the record were to be attached.

In addition, my Order provided that any party opposing a motion for summary judgment was required to file a brief in opposition to the motion and "in addition to a brief, a separate short concise statement, responding in numbered paragraphs to the moving party's statement of the material facts about which the opposing party contends there is a genuine dispute, with specific citations to the record, and, where practicable, attach copies of the relevant portions of the record."

Moreover, my Order provided that if the moving party failed to provide a concise statement, the motion may be denied on that basis alone. With regard to the opposing party, my Order provided: "All factual assertions set forth in the moving party's statement shall be deemed admitted unless specifically denied by the opposing party in the manner set forth [by the court]."

In this case, defendants filed a concise statement of facts in support of their motion for summary judgment. Although plaintiff filed a response in opposition, together with his own statement of facts, he did not file a separate responsive concise statement of undisputed facts with citation to the record as required by my Order. Thus, plaintiff has not specifically denied any of the facts set forth in defendants' concise statement as required by my Rule 16 Status Conference Order.

The requirement for a concise statement and a responsive concise statement is consistent with the requirement of Rule 56 of the Federal Rules of Civil Procedure that the moving party provide proof that there are no genuine issues of material fact which would prevent him from being entitled to judgment as a matter of law. Moreover, in response, the non-moving party (in this case plaintiff) may not rest on his pleadings, but must come forward with competent evidence that demonstrates a genuine issue of material fact. <u>Ridgewood</u>, <u>supra</u>.

In addition, Rule 83(b) of the Federal Rules of Civil Procedure provides:

> A judge may regulate practice in any manner consistent with federal law, rules adopted under 28 U.S.C. §§ 2072 and 2075, and local rules of the district. No sanction or other disadvantage may be imposed for noncompliance with any requirement not in federal law, federal rules, or local district rules unless the alleged violator has been furnished in the particular case with actual notice of the requirement.

Thus, even if my requirement for a separate concise statement were not consistent with Rule 56, my February 24, 2011 Rule 16 Status Conference Order gave plaintiff actual notice of my requirement, and plaintiff clearly failed to comply with it. <u>See</u> <u>Kelvin</u>

(<u>Footnote 2 continued</u>):

Beginning in March 2009, plaintiff Brian White was employed as a doorman and security guard each Thursday, Friday and Saturday night at the Riverview Bar & Grill, in Columbia Borough, Lancaster County, Pennsylvania.[3]  On Sunday, May 24, 2009 at approximately 2:00 p.m., plaintiff, along with his friend, Barry Funk, arrived at the Riverview Bar.[4]  Plaintiff was not working that day.  He and his friend were there as patrons, and sat at the bar.[5]  The two men evenly split three pitchers of beer.[6]

---

(Continuation of Footnote 2):

Cryosystems, Inc. v. Lightnin, 2004 U.S.Dist. LEXIS 23298, at *4 (E.D.Pa. Nov. 15, 2004)(Gardner, J.).

Accordingly, although I do not grant defendants' motion as unopposed, see E.D.Pa.R.Civ.P. 7.1(c), I deem admitted all facts contained in Defendants' Statement of Undisputed Material Facts in support of Motion of Defendants for Summary Judgment filed April 7, 2011 for purposes of the within motion only.

However, I also note that a review of plaintiff's Factual Background section contained in section II of Plaintiff's Motion for Summary Judgment (paragraphs 4-31, pages 1-5), filed April 14, 2011; together with the Factual Background section of Plaintiff's Memorandum of Law in Support of His Motion for Summary Judgment, (pages 11-15), which memorandum was filed April 14, 2011; and the Factual Background section of Plaintiff's Brief in Response to Defendants' Motion for Summary Judgment (pages 1-6), which brief was filed April 28, 2011, each reveal that no genuine issues of material fact exist which would preclude summary judgment in favor of defendant.

[3]    Deposition of Brian White, dated February 16, 2010, pages 12-13 and 26-27, attached to Motion of Defendants for Summary Judgment as Exhibit 1 (White Deposition).

[4]    White Deposition, pages 39 and 45.

[5]    White Deposition, pages 44-45 and 47.

[6]    White Deposition, page 53.

Two other patrons sitting at the bar that evening were Darryl Leese and Charles Messersmith.[7]  Among the other bar patrons that night was a woman, Nicole Shireman, who was celebrating her 21st birthday with her boyfriend.[8]

Plaintiff believed that Mr. Leese or Mr. Messersmith was harassing or upsetting Ms. Shireman.[9]  The bartender that evening, Tammy Caplinger, told plaintiff that he was mistaken and that neither man was harassing the girl.[10]  Plaintiff did not listen to Ms. Caplinger.

At approximately 7:30 p.m. plaintiff approached the area of the bar where both men were seated to stop the harassment which he believed was taking place. He pushed Mr. Leese to the ground.[11]  When Mr. Leese stood up, plaintiff pushed him to the ground again.[12]  Mr. Leese never hit or touched Mr. White.[13]

---

[7]    White Deposition, pages 46 and 48.

[8]    White Deposition, pages 35 and 48-50.

[9]    White Deposition, pages 51 and 79.

[10]    Deposition of Tammy Caplinger, dated March 17, 2010, page 25, attached to Motion of Defendants for Summary Judgment as Exhibit 2 (Caplinger Deposition).

[11]    Deposition of Darryl Leese, dated May 12, 2010, pages 13-15, attached to Defendants' Motion for Summary Judgment as Exhibit 3 (Leese Deposition); Deposition of Charles Messersmith, dated May 12, 2010, pages 32-34, attached to Motion of Defendants for Summary Judgment as Exhibit 4 (Messersmith Deposition); Caplinger Deposition, pages 25-28; White Deposition, pages 45-46 and 54-56.

[12]    Leese Deposition, pages 14-15; Messersmith Deposition, pages 33-34; White Deposition, page 66.

[13]    White Deposition, pages 66-67 and 72.

-7-

The bartender, Ms. Caplinger, then told plaintiff to leave the bar.[14]  She called the "911" emergency line and told the operator that "Brian White flipped out and knocked a guy off the bar stool."[15]  Mr. Messersmith also called 911.[16]  Plaintiff left the bar on foot, heading home.[17]

As a result of the 911 calls, Borough of Columbia police officers were dispatched to the Riverview Bar & Grill.[18] Three officers, Sergeant Jack Brommer, Officer Matthew Leddy and Officer Brent Keyser, were on duty that evening.[19]  All three were dealing with a separate matter at the time the 911 call center dispatched them to the Riverview Bar & Grill.[20]

The radio transmissions from the 911 Center were:

> (1)  "Possible fight in progress, 401 South Second Street, Riverview Bar and Grill.  There was a lot of yelling on the 9-1-1 call.  No one would answer the 9-1-1 operator and the line disconnected";

> (2)  "Units going to the Riverview Bar in Columbia Borough.  Bartender called back in, stated there

---

[14]    Caplinger Deposition, page 26; White Deposition, pages 60 and 72-73.

[15]    Caplinger Deposition, pages 26-28.

[16]    Messersmith Deposition, page 13.

[17]    White Deposition, page 74.

[18]    Deposition of Sergeant Jack Brommer, dated May 17, 2010, page 88, attached to Motion of Defendants for Summary Judgment as Exhibit 5 (Brommer Deposition).

[19]    Brommer Deposition, page 88.

[20]    Deposition of Officer Matthew Leddy, dated January 28, 2011, pages 33-34, attached to Motion of Defendants for Summary Judgment as Exhibit 6 (Leddy Deposition); Brommer Deposition, pages 88-89.

was a male by the name of Ryan[sic] there.  He's
possibly outside.  He's getting ready to leave
wearing a white shirt and shorts.  Unknown if he
is still outside";

(3)  "We got another call from there.  It's an
assault that happened.  It's a black guy in a
white T-shirt about 5 foot 8 walking on Lawrence
Street, apparently assaulted someone inside the
bar"; and

(4)  "I'm not sure if Ryan in a white T-shirt and
shorts is the same as the black male on
Lawrence."[21]

When Sergeant Brommer arrived at the bar, he talked to
the bartender.  She told him that plaintiff had pushed Mr. Leese
off the bar stool, and that plaintiff had left the bar.[22]
Sergeant Brommer also spoke to Mr. Leese and Mr. Messersmith,
both of whom also described plaintiff pushing Mr. Leese.[23]

All three witnesses reported to Sergeant Brommer that
plaintiff believed Mr. Leese or Mr. Messersmith had made a
comment to the woman and tried to follow her into the bathroom.[24]
All three also told Sergeant Brommer that plaintiff was mistaken,
and that no one had harassed Ms. Shireman.[25]

---

[21]     Leddy Deposition, pages 32, 37, 39, and 42.

[22]     Brommer Deposition, pages 101-103; Caplinger Deposition, page 32.

[23]     Brommer Deposition, pages 98-99; Leese Deposition, pages 15-18, 22
and 42; Messersmith Deposition, pages 14-15.

[24]     Brommer Deposition, pages 110-111.

[25]     Brommer Deposition, page 111.

-9-

Sergeant Brommer also spoke to Ms. Shireman, who was upset, but he obtained no written statement from her or her boyfriend.[26]

Sergeant Brommer then transmitted to units over the County-wide radio channel, including Officer Leddy, that the suspect is Brian White, who resides on Cherry Street.[27]

At this point, the facts become much less clear. Officer Leddy stated in his deposition that Sergeant Brommer directed him to arrest plaintiff for suspicion of assault, and that the arrest was Sergeant Brommer's decision.[28]  Officer Leddy said that Sergeant Brommer told him that the man assaulted wished to press charges, and that Sergeant Brommer told Officer Leddy that if he ran across plaintiff he should be placed in custody.[29]

Sergeant Brommer, on the other hand, stated in his deposition that he never told anyone to arrest plaintiff and that the decision was entirely that of Officer Leddy.[30]  Sergeant Brommer also testified at his deposition that Officer Leddy arrested plaintiff for public drunkenness, and that the arrest was not at that time related to the incident at the bar.[31]

---

[26]     Brommer Deposition, pages 111-113.

[27]     Brommer Deposition, pages 122-123; Leddy Deposition, page 46.

[28]     Leddy Deposition, pages 26-28 and 58.

[29]     Leddy Deposition, pages 71-72.

[30]     Brommer Deposition, pages 122-127.

[31]     Brommer Deposition, pages 125-127.

The difference between the deposition testimony of Sergeant Brommer and Officer Leddy on whether or not Sergeant Brommer told Officer Leddy to arrest plaintiff is not material to the decision here.

The degree of intoxication exhibited by plaintiff is also in dispute.  Officer Leddy approached plaintiff as he was walking on Fifth Street.[32]  Officer Leddy said that plaintiff appeared angry and agitated, and used profanity.[33]  According to Officer Leddy, plaintiff was "clearly intoxicated; displaying glassy bloodshot eyes, slurred speech and a strong odor of intoxicated [sic] beverage emanating from his breath."[34]

Officer Leddy wrote in his police report:

> I advised White that I was attempting to determine
> what happened at the bar, but he again insisted
> that I arrest him.  Due to his obvious level of
> intoxication and distinct possibility that he
> would be a danger to himself or others or
> annoyance of others, I placed White under arrest
> and handcuffed him.[35]

Officer Leddy said that he placed plaintiff in handcuffs for the safety of both White and himself.  This was based on plaintiff's level of agitation, his use of expletives, together with the information that plaintiff had just been

---

[32]    Leddy Deposition, page 49; White Deposition, page 74.

[33]    Leddy Deposition, pages 68 and 70-71.

[34]    Leddy Deposition, page 70.

[35]    Leddy Deposition, page 71.

involved in assaulting someone.[36]  Officer Leddy testified that
he wanted to lessen the chance of Mr. White attempting to assault
him, or trying to break a window while being transported in the
police car.[37]

Plaintiff, however, denied being drunk or even
"buzzed," and says he used no expletives in speaking with Officer
Leddy.[38]  Plaintiff testified in his deposition that when
approached by Officer Leddy, he merely put his hands out in front
of him and said "do what you have to do."[39]

Officer Keyser radioed the communication center that
plaintiff was in custody.[40]  Sergeant Brommer requested Officer
Leddy to bring plaintiff back to the Riverview Bar, which he
did.[41]  Officer Leddy next transported plaintiff from the bar to
the police station.[42]

Once at the station, plaintiff admitted that he was
involved in the altercation at the bar.  He claimed that he
became involved because Mr. Leese and Mr. Messersmith were making

---

[36]     Leddy Deposition, pages 73-74.

[37]     Leddy Deposition, page 74.

[38]     White Deposition, pages 77 and 79.

[39]     White Deposition, pages 76-78.

[40]     Leddy Deposition, pages 49-50.

[41]     Brommer Deposition, pages 128-129; Leddy Deposition, pages 50-51
and 54.

[42]     Leddy Deposition, page 54.

rude comments to the woman.[43]  Plaintiff further admitted having consumed alcohol, though he denied being drunk.[44]

Sergeant Brommer issued plaintiff two non-traffic citations for Disorderly Conduct and Public Drunkenness.[45]  In keeping with police procedure that an intoxicated individual must be released to a sober adult, remain at the station until sober, or driven home, Officer Leddy drove plaintiff home after about 25 minutes in the police station.[46]

Ms. Caplinger, the bartender, notified Lloyd Warner, the manager of the Riverview Bar, about the incident.[47]  Bob Marrow, the owner of the bar, made the decision to terminate plaintiff from his employment at the Riverview Bar because of plaintiff's involvement in the May 24, 2009 incident.[48] Plaintiff testified that he does not know what, if anything, was said by Sergeant Brommer to Mr. Marrow regarding plaintiff's employment at the Riverview Bar.[49]

---

[43]     Brommer Deposition, pages 142-145; Leddy Deposition, pages 78-79.

[44]     Leddy Deposition, page 79.

[45]     Brommer Deposition, page 136.

[46]     Leddy Deposition, pages 80-83.

[47]     Deposition of Lloyd Warner, dated February 16, 2010, page 17, attached to Motion of Defendants for Summary Judgment as Exhibit 7; Caplinger Deposition, pages 17-18.

[48]     Affidavit of Robert B. Marrow, dated March 20, 2010, page 1, attached to Motion of Defendants for Summary Judgment as Exhibit 8. (Marrow Affidavit).

[49]     White Deposition, pages 110-111.

Plaintiff has not sought any medical treatment relating to the incident on May 24, 2009.[50]  Furthermore, he has experienced no mental or physical symptoms relating to the incident or the termination of his job at the Riverview Bar.[51]

Columbia Borough requires all civilians making complaints against police officers to complete and notarize a civilian complaint form.[52]  The department maintains written policies, but does not have a specific "policy" regarding police officers contacting an arrestee's employer.[53]  There is a written policy regarding warrantless arrests which mirrors the Pennsylvania statute regarding warrantless arrests.[54]

Columbia Borough police officers receive annual training provided by the Pennsylvania Municipal Police Officers' Education and Training Commission, including Anti-discrimination training.[55]

At a hearing before local Magisterial District Judge Robert A. Herman in Columbia, Lancaster County, Pennsylvania, on

---

[50]     White Deposition, page 112.

[51]     White Deposition, page 112.

[52]     Deposition of Chief Joseph Greenya, dated January 28, 2011, pages 10-11, attached to Motion of Defendants for Summary Judgment as Exhibit 10 (Greenya Deposition).

[53]     Greenya Deposition, pages 18 and 25.

[54]     Greenya Deposition, page 29.

[55]     Greenya Deposition, page 45.

-14-

June 30, 2009, plaintiff was found not guilty on the charges of disorderly conduct and public drunkenness.[56]

## CONTENTIONS OF THE PARTIES

### Defendants' Contentions

Defendants contend that they are entitled to summary judgment on each claim asserted by plaintiff Brian White.

Initially, defendants contend that they are entitled to summary judgment on plaintiff's claim for unconstitutional seizure because probable cause existed to arrest him.  They contend that, based on the undisputed facts known to the officers at the time of the arrest, probable cause existed to arrest plaintiff for disorderly conduct, public drunkenness, harassment, and simple assault.

Next, defendants assert that they are entitled to summary judgment on plaintiff's claim of malicious prosecution for the same reason; specifically, that probable cause clearly existed at the time of plaintiff's arrest, based on facts not in dispute.

Defendants argue that they are entitled to summary judgment on plaintiff's claim for intentional discrimination regarding plaintiff's claim for violation of his right to contract and violation of equal protection pursuant to 42 U.S.C. §§ 1981 and 1983.  Regarding the right to contract claims,

---

[56]     Non-Traffic Docket for Case Number MJ-02103-NT-0000339-2009, pages 1-2, attached to Plaintiff's Motion to Dismiss as Exhibit E.

defendants contend that plaintiff has presented no evidence which suggests that Sergeant Brommer interfered with his employment, other than what he initially averred in his Amended Complaint.

As to plaintiff's equal protection claim, defendants argue that there are no facts in the record to suggest that plaintiff was treated differently than similarly situated people regarding his arrest.  Rather, plaintiff was arrested because he was the only person who committed any violations.

Defendants further contend that even if the court were to find that material facts exist concerning whether or not defendants violated plaintiff's constitutional rights, defendants Brommer and Leddy are entitled to summary judgment because any mistakes made in arresting plaintiff were reasonable.  Therefore, they are entitled to qualified immunity, and a grant of summary judgment is proper.

Next, defendants argue that they are entitled to summary judgment on plaintiff's claim for intentional infliction of emotional distress because plaintiff has failed to produce any evidence of sufficiently outrageous behavior on the part of defendants.  In addition, plaintiff has not sought any medical treatment resulting from the May 24, 2009 incident.

Moreover, defendants seek summary judgment on plaintiff's claim for tortious interference with a contractual relationship on the same grounds as the claim for discrimination

-16-

regarding his right to contract.  Specifically, they contend that plaintiff has failed to produce any evidence in support of his averment that Sergeant Brommer contacted Bob Marrow, owner of the Riverview Bar, and told him to fire plaintiff from his position as a doorman and security guard.

Defendants assert that they are entitled to summary judgment on plaintiff's claim for defamation.  Defendants argue that summary judgment is proper on this claim because plaintiff failed to produce any evidence to support his assertion that Sergeant Brommer made any of the defamatory comments alleged in the Amended Complaint.

Finally, defendants seek summary judgment on plaintiff's <u>Monell</u> claim[57] against the Borough of Columbia which would place municipal liability on the Borough, for two reasons. First, because plaintiff has not produced adequate evidence of any constitutional violation, and a <u>Monell</u> claim cannot survive absent a constitutional violation by an officer.

Second, defendants argue that plaintiff has not produced evidence to support his claim of inadequate police training, the theory under which plaintiff has brought this <u>Monell</u> claim.  Defendants assert that a plaintiff bringing such a claim needs to show that the Borough showed "deliberate

---

[57]     <u>Monell v. Department of Social Services</u>, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

indifference" to the problems resulting from the failure to train.

Furthermore, the Borough must have had notice of the problems caused by the failure to train, and that in failing to remedy the problem they sent a message of approval to the offending officer or officers. Defendants contend that there is no evidence suggesting a pattern of constitutional violations which would put defendant Borough on such notice and which would show "deliberate indifference" to the problem.

<u>Plaintiff's Contentions</u>

Plaintiff contends that he is entitled to summary judgment on some of his claims.

First, he seeks summary judgment on his claim for unconstitutional seizure. He contends that neither Sergeant Brommer nor Officer Leddy were, at the time of arrest, aware of facts that would lead a reasonable person to believe there was probable cause that plaintiff had committed a crime.

Furthermore, plaintiff argues that neither Officer Leddy, nor Sergeant Brommer agree who decided to arrest plaintiff, what he was arrested for, and what constituted the probable cause for that arrest. Thus, plaintiff asserts that probable cause did not exist for his arrest.

Plaintiff also seeks summary judgment on his claim for malicious prosecution arguing, once again, that no probable cause

could have existed for his arrest, and that the that lack of probable cause constitutes the requisite malice.

Next, plaintiff contends that he is entitled to summary judgment on his claim of violation of equal protection, pursuant to 42 U.S.C. §§ 1981 and 1983.  He asserts that this violation occurred because plaintiff was treated differently than similarly situated individuals on the basis of his race.  Specifically, plaintiff argues that Sergeant Brommer arrested plaintiff, an African-American, without probable cause, while not arresting Daryl Leese and Charles Messersmith, both of whom are Caucasian, and both of whom Sergeant Brommer knew to be intoxicated in public.

Furthermore, plaintiff avers that Sergeant Brommer did not pursue the allegations of harassment made by plaintiff against Mr. Leese and Mr. Messersmith regarding the young woman at the bar, Nicole Shireman.

Finally, plaintiff contends that defendants are not entitled to qualified immunity on the facts of this case. Plaintiff asserts that he was arrested without probable cause, and was treated differently as a result of his race by Sergeant Brommer, who ignored similar allegations made against Caucasian individuals.  Plaintiff argues that this behavior is not reasonable, and that qualified immunity is not appropriate.

Plaintiff appears to make no arguments opposing defendants' motion for summary judgment regarding plaintiff's claims for violation of his right to contract, intentional infliction of emotional distress, tortious interference with a contractual relationship, defamation, or the Monell claim for municipal liability.

## DISCUSSION

### Count One

### Unconstitutional Seizure

In Count One of his Amended Complaint plaintiff asserts a claim under 42 U.S.C. § 1983 for unconstitutional seizure, in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

It is well-established that the Fourth Amendment "prohibits a police officer from arresting a citizen except upon probable cause." Reedy v. Evanson, 615 F.3d 197, 211 (3d Cir. 2010)(quoting Orsatti v. New Jersey State Police, 71 F.3d 480, 482 (3d Cir. 1995). Probable cause requires more than mere suspicion. It does not, however "require the same type of specific evidence of each element of the offense as would be needed to support a conviction." Id. (quoting Adams v. Williams, 407 U.S. 143, 149, 92 S.Ct. 1921, 1924, 32 L.Ed.2d 612, 618 (1972).

The test for an arrest without probable cause is an objective one, based on "the facts available to the officers at the moment of arrest."  Barna v. City of Perth Amboy, 42 F.3d 809, 819 (3d Cir. 1994)(quoting Beck v. Ohio, 379 U.S. 89, 96, 13 L.Ed.2d 142, 148, 85 S.Ct. 223, 228 (1964)). "In assessing the presence of probable cause, a court must determine the fact pattern the officer encountered and, in light of that, whether the arresting officer had probable cause to believe that a criminal offense has been or is being committed." Snell v. City of York, 564 F.3d 659, 671 (3d Cir. 2009)(quoting Sharrar v. Felsing, 128 F.3d 810, 818 (3d Cir. 1997)(internal quotation marks omitted).

Probable cause exists if there is a "fair probability" that the person committed the crime at issue.  Kossler v. Crisanti, 564 F.3d 181, 195 (3d Cir. 2009)(citing Wilson v. Russo, 212 F.3d 781, 789 (3d Cir. 2000)).

"It is irrelevant to the probable cause analysis what crime a suspect is eventually charged with." Wright v. City of Philadelphia, 409 F.3d 595, 602 (3d Cir. 2005)(citing Barna, 42 F.3d at 819).  Probable cause need only exist as to any offense that could be charged under the circumstances. Barna, 42 F.3d at 819 (citing Edwards v. City of Philadelphia, 860 F.2d 568, 575-576 (3d Cir. 1988).

Defendants argue that probable cause existed to arrest plaintiff on any of four charges: the summary offenses of Public drunkenness, Disorderly conduct, Harassment, and misdemeanor Simple assault.

Plaintiff contends that the defendants were not aware of any facts at the time of the arrest from which they could reasonably conclude that plaintiff had committed, or was committing any of those crimes.  For the following reasons, a review of the record does not support plaintiff's contentions.

There are indeed some disputed issues of fact, which are, however, not material.  It is not clear who actually made the decision to arrest the plaintiff.  Officer Leddy on one hand insists that he arrested plaintiff because Sergeant Brommer told him to.[58]  On the other hand, he states that he arrested Brian White because he appeared intoxicated and plaintiff might endanger himself or others or annoy persons in his vicinity.[59]

Sergeant Brommer, in contrast, testified that he did not give Officer Leddy any instructions to arrest plaintiff, and that Officer Leddy made that decision alone, based on the public drunkenness charge.[60]

---

[58]    Leddy Deposition, page 28.

[59]    Leddy Deposition, page 71.

[60]    Brommer Deposition, pages 125-126.

-22-

However, whether Sergeant Brommer told Officer Leddy to arrest plaintiff is not material to the probable cause analysis here.  One of the two officers made the decision to arrest plaintiff.  Although it is unclear which man made the determination to arrest, if both officers were, at the time of the arrest, aware of facts that would lead a reasonable officer in their position to believe that a crime was being or had been committed, it would not matter who made the decision, and each defendant would be entitled to summary judgment on the claim for unconstitutional seizure.  See <u>Snell</u>, 564 F.3d at 671.

The Pennsylvania criminal statute defining Disorderly conduct provides, in relevant part:

> A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:
>
> > (1) engages in fighting or threatening, or in violent or tumultuous behavior;
> >
> > (2) makes unreasonable noise;
> >
> > (3) uses obscene language, or makes an obscene gesture; or
> >
> > (4) creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor.

18 Pa.C.S.A. § 5503.

The Pennsylvania criminal statute defining Public drunkenness and similar misconduct provides that:

> A person is guilty of a summary offense if he appears in any public place manifestly under the

> influence of alcohol or a controlled
> substance...to the degree that he may endanger
> himself or other persons or property, or annoy
> persons in his vicinity.

18 Pa.C.S.A. § 5505.

It is undisputed that plaintiff pushed Mr. Leese from his barstool, and that he was neither struck nor touched by Mr. Leese.[61]  Ms. Caplinger and Mr. Messersmith both dialed 911 to report the incident.[62]  Ms. Caplinger told plaintiff to leave the bar, and he headed home on foot.[63]

A review of the record reveals what facts were available to Sergeant Brommer at the time plaintiff was taken into custody. Police were alerted to the 911 calls and were dispatched to the bar regarding the fight.[64]  Sergeant Brommer was the first officer for the Columbia Borough Police Department to arrive at the scene.[65]  Sergeant Brommer learned from the victim, Mr. Leese, and witnesses, Mr. Messersmith and Ms. Caplinger, that plaintiff had knocked Mr. Leese down based on what the witnesses said was an unfounded belief that Mr. Leese and Mr. Messersmith had been upsetting a young female bar patron,

---

[61]     White Deposition, pages 54-56.

[62]     Caplinger Deposition, pages 26-28; Messersmith Deposition, page 13.

[63]     Caplinger Deposition, page 29; White Deposition, page 74.

[64]     Brommer Deposition, page 88; Leddy Deposition, pages 31-46.

[65]     Brommer Deposition, page 93-94; Leddy Deposition, page 44.

Nicole Shireman.[66]  Further, Sergeant Brommer testified at his deposition as follows:

> Q [By Anthony R. Sherr, Esquire, counsel for plaintiff]: Was there a disturbance going on when you arrived?
>
> A: There was a large crowd that gathered outside the bar, so people were very emotional, upset, so it had the potential.
>
> Q: So you would say there was a disturbance going on because of the people who were outside of the bar?
>
> A: There was a disturbance going on because of Mr. White's actions in the bar that it happened.
>
> Q: Well, wait. Mr. White wasn't there, right, when you got there?
>
> A: People were upset about his behavior.
>
> Q: Okay. Who was upset about this behavior in particular?
>
> A: Mr. Messersmith, Mr. Leese, the bartender.[67]

Therefore, at the time of plaintiff's arrest, Sergeant Brommer knew that plaintiff had knocked Mr. Leese from his barstool, even though Mr. Leese had not touched the plaintiff. He knew that 911 had been called.  He observed that this behavior had upset people in the bar.

Based on this knowledge of plaintiff's physical altercation, probable cause existed for Sergeant Brommer to

---

[66]     Leese Deposition, pages 15-18; Brommer Deposition, pages 98-99, 102 and 110-111; Messersmith Deposition, page 15.

[67]     Brommer Deposition, pp. 118-119.

arrest plaintiff for disorderly conduct because he knew that plaintiff had engaged in fighting or threatening, or in violent or tumultuous behavior, with the intent to cause public inconvenience, annoyance or alarm, or had recklessly created a risk thereof.

On the other hand, the facts surrounding plaintiff's behavior at the time he encountered Officer Leddy are less clear. Officer Leddy reported that when he encountered plaintiff on the street on the evening of May 24, 2009, plaintiff looked angry and was walking at a brisk pace.[68]  Officer Leddy's police report also states that plaintiff "was clearly intoxicated; displaying glassy, bloodshot eyes, slurred speech and a strong odor of intoxicated [sic] beverage emanating from his breath."[69]

Officer Leddy testified that when he approached plaintiff, plaintiff said "mother fuckers were talking shit" and "go ahead fucking arrest me."[70]  Further, Officer Leddy said in his report: "I advised White that I was attempting to determine what happened at the bar, but he again insisted that I arrest him."[71]

---

[68]     Leddy Deposition, page 68.

[69]     Leddy Deposition, page 70.

[70]     Leddy Deposition, pages 70-71.

[71]     Leddy Deposition, page 71.

It is also uncontested that Brian White shared three pitchers of beer while at the Riverview Bar on the afternoon of May 24, 2009.[72]

Plaintiff, however, testified in his deposition that he was not drunk:

> Q [by Christopher P. Gerber, Esquire, counsel for defendants]: At the time that Officer Leddy approached you, were you intoxicated?
>
> A: No.
>
> Q: Buzzed?
>
> A: No.
>
> Q: Under the influence of alcohol to any degree?
>
> A: Well, I had 3 pitchers, 3½, 3 pitchers.
>
> Q: What does that mean? Did you feel the side effects?
>
> A: No, I was fine.
>
> Q: You didn't feel any of the effects of 3 pitchers of alcohol?
>
> A: I shared 3 pitchers with my friend, Barry.[73]

Ms. Caplinger, the bartender, also testified that plaintiff did not appear to be drunk that evening.[74]

Plaintiff has a somewhat different version of his meeting with Officer Leddy.  He denies having used any of the

---

[72]    White Deposition, page 53.

[73]    White Deposition, page 79.

[74]    Caplinger Deposition, page 14.

-27-

expletives described by Officer Leddy in his report, and says that, upon meeting Officer Leddy, he merely said "do what you got to do" while stretching his arms out as if to be handcuffed.[75]

It is clear in the record that Officer Leddy had heard the dispatches from the 911 center alerting units to the possible fight in progress.[76]  Further, he knew that plaintiff was named by Sergeant Brommer as the suspect in the fight.[77]  Although plaintiff says he was not intoxicated, plaintiff admits, and it is undisputed that, he split at least three pitchers of beer at the Riverview Bar before heading home.  Plaintiff also denies using any profanity but admits that he put his hands out as if to be handcuffed and said "do what you have to do," seemingly suggesting that there was some reason he should be arrested.

Faced with a strong smell of alcohol on plaintiff's breath, Officer Leddy had reason to believe that plaintiff was in a public place under the influence of alcohol.  Armed with the knowledge that plaintiff was the named suspect in a bar fight, and in light of plaintiff's behavior in which he handed himself over to be arrested, Officer Leddy had reason to believe plaintiff was intoxicated to the degree that he may endanger himself or other persons or property, or annoy persons in his

---

[75]    White Deposition, page 78.

[76]    Leddy Deposition, pages 31-46.

[77]    Brommer Deposition, page 122; Leddy Deposition, pages 28 and 46.

vicinity.  The requirement that plaintiff be under the influence
of alcohol to the degree that he may "annoy persons in his
vicinity," is an element of the crime as listed in the statute.
18 Pa.C.S.A. § 5505.  At a minimum, Mr. Leese could have
reasonably been annoyed by being pushed to the ground twice by
plaintiff.

Therefore, at the time of arrest, Sergeant Brommer had
probable cause to believe that plaintiff had committed the
summary offense of Disorderly conduct.  Also, at the time of
arrest, Officer Leddy had probable cause to believe that
plaintiff was in violation of the statute outlawing Public
drunkenness.

Although there is a dispute concerning who made the
decision to arrest plaintiff and why, it is a not a dispute
concerning a material fact because probable cause existed for
arrest based on the facts known to either officer.  Thus,
plaintiff's claim for unconstitutional seizure cannot be
maintained.  Accordingly, I grant defendants' motion for summary
judgment on Count One of plaintiff's Amended Complaint.

<u>Qualified Immunity</u>

Defendants also seek qualified immunity.  Qualified
immunity is a doctrine which "protects government officials from
liability for civil damages insofar as their conduct does not
violate clearly established statutory or constitutional rights of

-29-

which a reasonable person would have known." Kelly v. Borough of Carlisle, 622 F.3d 248, 253 (3d Cir. 2010)(quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396, 410 (1982)(internal quotation marks omitted).

There is a two-prong test for qualified immunity: (1) whether the facts alleged by the plaintiff show the violation of a constitutional right, and (2) whether the law was clearly established at the time of the violation. Id. (citing Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272, 281 (2001). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." 533 U.S. at 202, 121 S.Ct. at 2156, 150 L.Ed.2d at 282.

Because I have concluded that probable cause did exist when defendants Brommer and Leddy arrested plaintiff, they violated no constitutional right in arresting him. Therefore, it is not necessary to determine whether the officers have qualified immunity on the claim of unconstitutional seizure based on a lack of probable cause. However, I conclude that both Sergeant Brommer and Officer Leddy would have qualified immunity because they did not violate plaintiff's constitutional rights.

However, defendants argue in their brief, though plaintiff does not raise the issue, that should the plaintiff

contend that the offenses had to be committed in the presence of an officer in order to justify a warrantless arrest, such a requirement does not exist for minor offenses.  In support of this proposition, they cite Hughes v. Shestakov, 76 Fed.Appx. 450 (3d Cir. 2003), where the plaintiff, Shestakov, was arrested without a warrant for Criminal Mischief even though his actions did not occur in the presence of the officer.

In Morales v. Taveras, 2007 U.S.Dist. LEXIS 4081, at *44 n.23 (E.D.Pa. Jan. 18, 2007)(Stengel, J.), my colleague United States District Judge Lawrence F. Stengel granted qualified immunity to defendant police officers because "Pennsylvania law with respect to the authority to make a warrantless arrest for a summary offense is far from certain, i.e. it is not 'clearly established.'"  So even if an "in the presence" requirement for warrantless arrests of summary offenses did exist under Pennsylvania law, defendants would be entitled to qualified immunity on any false arrest claim because it would not be clear to a reasonable officer in their respective situations that a warrant is required to make an arrest for a summary offense based on probable cause.

<u>Count Two</u>

<u>Malicious Prosecution</u>

Defendants also seek summary judgment on Count Two, plaintiff's claim for malicious prosecution.

-31-

To prove malicious prosecution pursuant to 42 U.S.C. § 1983 when the claim is under the Fourth Amendment, a plaintiff must show that: (1) defendant initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) defendant initiated the proceeding without probable cause; (4) defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding. Johnson v. Knorr, 477 F.3d 75, 81-82 (3d Cir. 2007)(citing Estate of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir. 2003)).

Because as discussed above, plaintiff is not able to establish the third prong, that the defendants initiated the criminal proceeding without probable cause, I grant the defendants summary judgment on this claim.

<u>Count Three</u>

<u>Right to Contract</u>

Next, defendants seek summary judgment regarding plaintiff's claim that defendant Sergeant Brommer deprived plaintiff of his right to contract in violation of 42 U.S.C. § 1981. Defendants contend that they are entitled to summary judgment because plaintiff has failed to produce any evidence to support the allegation that Sergeant Brommer contacted Riverview Bar owner Bob Marrow and requested termination of plaintiff's

employment.  Significantly, in Plaintiff's Brief in Response to Defendants' Motion for Summary Judgment plaintiff has not responded to this defense contention.

In his deposition, plaintiff testified that Sergeant Brommer telephoned Mr. Marrow on or about May 25, 2009.[78] Sergeant Brommer denies speaking to Mr. Marrow.[79]  Plaintiff testified that he learned about the conversation from Mr. Marrow himself, and that Mr. Marrow told him that Sergeant Brommer "don't like you."[80]  But as to whether Sergeant Brommer said anything to Mr. Marrow about firing him, plaintiff responded "I'm not sure. I don't remember."[81]  Further, elsewhere in the deposition plaintiff testified as follows:

> Q [by Christopher P. Gerber, Esquire, counsel for defendants]: Did Bob [Marrow] tell you that Sergeant Brommer told Bob that you were unfit to work as a doorman, security?
>
> A: I'm not sure.
>
> Q: Did Bob tell you that Sergeant Brommer requested that the owner/manager fire you?
>
> A: I'm not sure.

---

[78]    White Deposition, page 100.

[79]    Brommer Deposition, page 71.

[80]    White Deposition, pages 100-101.

[81]    White Deposition, page 101.

> Q: Did Sergeant Brommer tell anybody else
> affiliated with the bar that you should be fired?
>
> A: I'm not sure.[82]

Further, in his sworn affidavit, Mr. Marrow states that he decided to terminate plaintiff from his position at the Riverview Bar based solely on the incident of May 24, 2009 and the information provided to him by bar employees.[83]

Thus, plaintiff fails to establish any violation of his right to contract.  Although he averred in his Amended Complaint that Sergeant Brommer "requested that the owner/manager terminate Brian White's employment."[84] he has produced no evidence to support it.

In his sworn deposition, plaintiff himself admits that he has no knowledge of what, if anything, was communicated between Sergeant Brommer and Mr. Marrow regarding his employment during the alleged phone call.  In a motion for summary judgment, the non-moving party may not rest upon the mere allegations or denials contained in his pleadings.  See Martin v. Godwin, 499 F.3d 290, 295 (3d Cir. 2007).

In the absence of any evidence that could support a jury finding that plaintiff's right to contract was interfered

---

[82]     White Deposition, page 110.

[83]     Marrow Affidavit, page 1.

[84]     Amended Complaint, ¶ 22.

-34-

with, I grant summary judgment to defendant Sergeant Brommer on
this claim.

### Equal Protection

Defendants move for summary judgment on plaintiff's
claim for violation of equal protection.  Plaintiff argues that
the violation occurred because defendants chose to arrest him, an
African-American, while ignoring plaintiff's allegations against
Mr. Leese and Mr. Messersmith, both Caucasians.

To establish a selective-enforcement equal-protection
claim against defendants, a plaintiff must demonstrate (1) that
he was treated differently from other similarly situated
individuals, and (2) "that this selective treatment was based on
an unjustifiable standard, such as race, or religion, or some
other arbitrary factor...or to prevent the exercise of a
fundamental right." Dique v. New Jersey State Police,
603 F.3d 181, 184 at n.5 (3d Cir. 2010)(citing Hill v. City of
Scranton, 411 F.3d 118, 125 (3d Cir. 2005)(internal quotation
marks omitted).

Intentional or purposeful discrimination is a necessary
element of an equal protection claim. Wilson v. Schillinger,
761 F.2d 921, 929 (3d Cir. 1985).  For a § 1983 plaintiff to
survive a motion for summary judgment where intent is an element
of his claim, the plaintiff must provide affirmative evidence
from which a jury could find that the plaintiff has carried his

or her burden of proving the pertinent motive.  Desi's Pizza,
Inc. v. City of Wilkes-Barre, 2006 U.S.Dist. LEXIS 59610
at *68-69 (M.D.Pa. Aug. 23, 2006)(Blewitt, M.J.)(quoting
Johnson v. Anhorn, 416 F.Supp.2d 338, 376 (E.D.Pa., 2006)
(Brody, J.)).

    Plaintiff contends that he was similarly situated to
Mr. Leese and Mr. Messersmith, yet received disparate treatment
at the hands of defendants Brommer and Leddy.  The record does
not support this contention.

    Sergeant Brommer arrived at the bar to investigate a
call about a fight, at which point he learned from witnesses,
including the bartender, Tammy Caplinger, that plaintiff knocked
Mr. Leese from his barstool.[85]  It is undisputed that plaintiff
did in fact knock Mr. Leese down.[86]

    Further, it is undisputed that Mr. Leese did not touch
plaintiff.  Thus, plaintiff was the only person at the bar
accused of violent behavior.

    Ms. Caplinger told Sergeant Brommer that although
plaintiff believed both Mr. Leese and Mr. Messersmith had been
involved in harassing a young woman, Nicole Shireman, the
accusation was not true.[87]

---

[85]    Brommer Deposition, pages 98-99 and 102; Leese Deposition,
pages 15-18; Messersmith Deposition, page 15.

[86]    White Deposition, pages 54-56.

[87]    Brommer Deposition, pages 110-111.

As analyzed above, probable cause existed for both Sergeant Brommer and Officer Leddy to arrest plaintiff for disorderly conduct and public drunkenness, respectively. However, the record does not create such an inference regarding the behavior of Mr. Leese or Mr. Messersmith.

Plaintiff contends that defendants arrested plaintiff, but chose not to arrest Mr. Leese or Mr. Messersmith even though "Sergeant Brommer had first hand knowledge that Mr. Leese and Mr. Messersmith were intoxicated in public[.]"[88] Plaintiff contends that the failure to arrest those two men is evidence of a violation of his equal protection rights and that he was really arrested because of his race.

A person is guilty of the summary offense of public drunkenness "if he appears in any public place manifestly under the influence of alcohol...to the degree that he may endanger himself or other persons or property, or annoy persons in his vicinity."  18 Pa.C.S.A. § 5505.

Plaintiff has adduced no evidence to suggest that defendants had probable cause to arrest either Mr. Leese or Mr. Messersmith for public drunkenness.

It is undisputed that Sergeant Brommer knew both Mr. Leese and Mr. Messersmith had been drinking.[89]  However, the

---

[88]    Plaintiff's Brief in Response to Defendants' Motion for Summary Judgment, page 10.

[89]    Brommer Deposition, page 106.

record does not support the contention that Sergeant Brommer witnessed any behavior by the two men from which he could reasonably conclude that either was under the influence of alcohol to the degree that he may endanger himself or other persons or property, or annoy persons in his vicinity.

Sergeant Brommer knew from the witness accounts that neither man had touched the plaintiff.  Moreover, Ms. Caplinger told Sergeant Brommer that neither man had, as plaintiff believed, harassed the woman.

In contrast, probable cause existed to arrest plaintiff, who admittedly shoved Mr. Leese from his stool and who Officer Leddy believed was showing signs of such serious intoxication that he did not believe it was safe to leave plaintiff alone.  Because the record does not show that probable cause existed for a reasonable officer to arrest either Mr. Leese or Mr. Messersmith, defendants' failure to do so raises no inference of a violation of equal protection.

Additionally, plaintiff argues that Sergeant Brommer ignored his accusations that Mr. Leese and Mr. Messersmith were involved in harassing Ms. Shireman.[90]  However, it is undisputed that plaintiff left the bar before Sergeant Brommer arrived, and that plaintiff therefore would have had no contact with Sergeant

---

[90]     Brommer Deposition, pages 143-145.

Brommer before Sergeant Brommer made the decision not to arrest Mr. Leese and Mr. Messersmith at the bar.

Plaintiff appears to further argue that we can infer disparate treatment because Sergeant Brommer "refused to even consider the allegations that Mr. Leese and/or Mr. Messersmith harassed Ms. Shireman,"[91] and that Sergeant Brommer chose not to interview Nicole Shireman.  This allegation is not supported by the record.  When Sergeant Brommer spoke to Ms. Caplinger, a third party to the incident, she insisted that no such harassment ever took place.[92]

Further, despite plaintiff's contention, there is evidence in the record that Sergeant Brommer did speak to Ms. Shireman.  In support of his averment that Sergeant Brommer did not interview Ms. Shireman, plaintiff cites Sergeant Brommer's deposition at pages 111-113.  However, he mischaracterizes Sergeant Brommer's testimony in this regard.  On the contrary, a review of those pages of the deposition reveals that Sergeant Brommer testified that he did interview Ms. Shireman, but did not obtain a statement from her.[93]

---

[91]     Plaintiff's Brief in Response to Defendants' Motion for Summary Judgment, page 10.

[92]     Brommer Deposition, pages 110-111.

[93]     Brommer Deposition, pages 111-113.

Plaintiff has also not adduced any other evidence from which I can infer the requisite intent to discriminate against him on the basis of his race.  From plaintiff's deposition:

> Q [by Christopher P. Gerber, Esquire, counsel for defendants]: Did [Sergeant Brommer] call you a racial name?
>
> A: No.
>
> Q: Did he act in any way unprofessional to you that evening?
>
> A: No.[94]

Plaintiff fails to create a genuine issue of material fact regarding whether defendants had an intent to discriminate against plaintiff.  Furthermore, plaintiff has not produced any evidence that he received disparate treatment in relation to similarly situated individuals.  Therefore, I grant summary judgment to the defendants on plaintiff's equal protection claim.

### Monell Claim

Defendants also seek summary judgment on plaintiff's Monell claim[95], which would attach liability to Columbia Borough under a theory of failure to properly train police officers.

To prevail on a Monell claim, a plaintiff must establish that: (1) the municipality had a policy or custom that deprived him of his constitutional rights; (2) the municipality

---

[94]     White Deposition, pages 111-112.

[95]     Monell v. Department of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

acted deliberately and was the moving force behind the deprivation; and (3) his injury was caused by the identified policy or custom.  Pelzer v. City of Philadelphia, 656 F.Supp.2d 517, 531 (E.D.Pa. 2009)(Stengel, J.)(citing Board of the County Commisioners of Bryan County v. Brown, 520 U.S. 397, 403-404, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997)).

The Third Circuit has noted that establishing municipal liability on a Monell claim for inadequate training is difficult. Reitz v. County of Bucks, 125 F.3d 139, 145 (3d Cir. 1997).

For municipal liability to apply, there must be a violation of a plaintiff's constitutional rights.  Startzell v. City of Philadelphia, 533 F.3d 183, 204 (3d Cir. 2008)(citing Brown v. Pennsylvania Department of Health Emergency Medical Training Services Institute, 318 F.3d 473, 482 (3d Cir. 2003).

Because probable cause existed to arrest the plaintiff, an unconstitutional seizure has not been established and no liability can be conferred on the Borough of Columbia.[96]

---

[96]    It is not clear that plaintiff is pursuing a Monell claim under Counts One or Two.  He does not address such a claim in either his Brief in Response to Defendants' Motion to Dismiss, or anywhere in his own motion or its accompanying brief.  The sole suggestion comes in paragraph 28 of his Amended Complaint, which states:

> The lack of adequate training of Columbia Borough Police
> Officers in the area of lawful arrests and post arrest
> procedures, including but not limited to interference with
> arrestees' employment contracts, constitutes deliberate
> indifference to the constitutional rights of Brian White,
> and is a policy, custom, or practice of Borough of Columbia
> for purposes of imposing municipal liability.

(Footnote 96 continued):

For the foregoing reasons, I have granted summary judgment to defendants on the claim for unconstitutional seizure, malicious prosecution, violation of equal protection and interference with plaintiff's right to contract.  Further, although not addressed by plaintiff, I also conclude that defendants Brommer and Leddy would also be entitled to qualified immunity for any claim alleging a false arrest based on their failure to obtain a warrant prior to the arrest.  Finally, because plaintiff has not established a violation of his constitutional rights, I grant summary judgment on any <u>Monell</u> claim under Counts One, Two or Three of the Amended Complaint.

<u>Count Four</u>

<u>Intentional Infliction of Emotional Distress</u>

Defendants move for summary judgment on plaintiff's Pennsylvania state law claim for intentional infliction of emotional distress.  Significantly, plaintiff has not responded with any contentions of his own regarding this claim, therefore, it can be disposed of readily.

---

(<u>Continuation of footnote 96</u>):

This is nothing more than a conclusory statement suggesting lack of training in regards to lawful arrests or probable cause.  It is labeled in the Amended Complaint as an "Allegation of Law".  The Amended Complaint contains no factual averments regarding any failure to train in the area of lawful arrests and probable cause.  In contrast, factual averments are made in Count Three of the Amended Complaint regarding a failure to train regarding contact with an arrestee's employer.

The Supreme Court of Pennsylvania has stated that to prevail on an emotional distress claim, plaintiff "must, at the least, demonstrate intentional[,] outrageous or extreme conduct by the defendant, which causes severe emotional distress to the plaintiff." Reeves v. Middletown Athletic Association, 866 A.2d 1115, 1122 (Pa.Super. 2004)(citing Hoy v. Angelone, 554 Pa. 134, 151, 720 A.2d 745, 754 (Pa. 1998)).

Plaintiff must suffer some type of resulting physical harm because of the defendants' outrageous conduct. Reeves, 866 A.2d at 1122-1123 (citing Fewell v. Besner, 444 Pa.Super. 559, 569, 664 A.2d 577, 582 (Pa.Super. 1995)); see Kazatsky v. King David Memorial Park, Inc., 515 Pa. 183, 197, 527 A.2d 988, 995 (1987).  In addition, expert medical testimony is required to establish a claim for intentional infliction of emotional distress.  Shiner v. Moriarty, 706 A.2d 1228, 1239 (Pa.Super. 1998)(citing Kazatsky, 515 Pa. at 197, 527 A.2d at 995).

In this regard, plaintiff testified as follows at his deposition:

> Q [by Christopher P. Gerber, Esquire, counsel for defendants]: Have you sought medical treatment?
>
> A: No.
>
> Q: Do you have any symptoms, mental or physical symptoms?
>
> A: No.

> Q: Any doctor tell you that you suffer from any
> type of medical condition?
>
> A: No.[97]

Plaintiff plainly states that he has not sought any medical treatment relating to the incident, he has not suffered from any mental or physical symptoms resulting from the incident, and no doctor has told him that he is suffering from any medical condition.  Accordingly, because plaintiff has not produced the required expert medical testimony, I grant summary judgment in favor of defendants on this claim and dismiss Count Four of plaintiff's Amended Complaint.

### Count Five

### Tortious Interference With a Contractual Relationship

Defendants also seek summary judgment on plaintiff's claim that Sergeant Brommer interfered with a contractual relationship.  Specifically, plaintiff contends that defendants interfered with his employment at the Riverview Bar.  Plaintiff has not responded to defendants' motion with contentions of his own on this claim.

The elements of such a claim for tortious interference with a contractual relationship are: (1) the existence of a contractual relationship between the complainant and a third party; (2) an intent on the part of the defendant to harm the

---

[97]     White Deposition, page 112.

plaintiff by interfering with that contractual relationship; (3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual damage as a result of defendant's conduct. Walnut Street Associates, Inc. v. Brokerage Concepts, Inc., 982 A.2d 94, 98 (Pa.Super. 2009).

The basis of this claim, as with plaintiff's allegations regarding deprivation of his right to contract, is that Sergeant Brommer telephoned Mr. Marrow, the owner of the Riverview Bar, and requested that the plaintiff be fired.  The analysis of the weaknesses of plaintiff's right-to-contract claim is equally applicable here.

As indicated in the discussion, above, of plaintiff's right-to-contract-claim, plaintiff failed to produce any evidence in support of his averment that Sergeant Brommer interfered with plaintiff's employment by requesting that plaintiff be terminated from his employment at the bar.  Therefore, plaintiff cannot make a prima facie case of intentional interference with a contractual relationship.  Accordingly, I grant summary judgment favor of defendants on Count Five of plaintiff's Amended Complaint.

<u>Count Six</u>

<u>Defamation</u>

Defendants also move for summary judgment on plaintiff's claim of defamation contained in Count Six of

-45-

plaintiff's Amended Complaint.  Once again, plaintiff makes no contentions of his own regarding this claim.

In Pennsylvania, a plaintiff making a claim for defamation must prove (1) the defamatory character of the communication; (2) its publication by the defendant to a third party; (3) its application to plaintiff; (4) the understanding by the third party recipient of its defamatory meaning; (5) the understanding by the third party recipient of it as intended to be applied to plaintiff; (6) special harm resulting to plaintiff from its publication; and (7) abuse of a conditionally privileged occasion.  42 Pa.C.S.A. § 8343.

Once again, the validity of this claim hinges on Sergeant Brommer allegedly having communicated to the bar owner, Robert Marrow, by telephone, that plaintiff was unfit for employment and should be terminated.  In his own deposition, plaintiff admitted that he was "not sure" whether Sergeant Brommer even made the defamatory statement.[98]  In the absence of any evidence that the statement was ever made, I grant summary judgment to defendant Sergeant Brommer on this claim.

<u>Plaintiff's Motion for Summary Judgment</u>

Because I have concluded that there are no genuine issues of material fact which preclude granting defendants'

---

[98]     White Deposition, pages 101 and 110.

motion for summary judgment, I deny plaintiff's motion for summary judgment.

CONCLUSION

For the foregoing reasons, I grant the Motion of Defendants for Summary Judgment on all claims.  Accordingly, because I have granted defendant's motion for summary judgment, I deny the Plaintiff's Motion for Summary Judgment.